STATE of Utah, Plaintiff and Appellee,

v.

John BECKER, Defendant and Appellant.

No. 890437–CA.

Court of Appeals of Utah.

Dec. 20, 1990.

Donald C. Hughes (argued), Donald C. Hughes, Jr. & Associates, Ogden, for appellant.

R. Paul Van Dam, State Atty. Gen., and Christine F. Soltis, Asst. Atty. Gen. (argued), Salt Lake City, for appellee.

Before BENCH, GARFF and ORME, JJ.

BENCH, Judge:

Defendant John Becker appeals his convictions of communications fraud, a second degree felony, in violation of Utah Code Ann. § 76–10–1801(1)(e) (1990), and unlawful acts of a director, officer, or agent, a third degree felony, in violation of Utah Code Ann. § 76–10–706 (1990).

From 1961 until 1986, Becker was employed by Mountain Oil Company in Ogden, Utah. In 1964, Allen and Paul Callister were the officers of Mountain Oil, Robert Dalton was the office manager, and Becker was the bookkeeper. In 1969, Allen Callister died, Paul Callister became president of the company, and another brother, Jan Callister, became vice president. Sometime later Dalton was made a director.

The Callisters were not involved in the day-to-day management of Mountain Oil and there is some dispute as to the extent of Becker's responsibilities. The parties agree, however, that Becker was in charge of Mountain Oil's bookkeeping. That responsibility included providing monthly reports to the Callisters' accountant, and paying all employee withholding taxes and various state and federal taxes. Becker's immediate supervisor was Dalton.

Dalton began taking money from the office petty cash account sometime in 1981. Some of this money was documented with IOUs, but some money was unaccounted for. Becker and other Mountain Oil employees were aware Dalton was taking money, but no one reported Dalton to the Callisters. Becker became aware that there were not only discrepancies in the petty cash account, but in assets, inventory, and sales figures as well. Becker manipulated the books to make up for those discrepancies. The Callisters and Dalton were not made aware of any of the adjustments in accounting until November 1986, when Becker went to Paul Callister and told him of the discrepancies. At that point, Mountain Oil owed large amounts of money in unpaid taxes and other debts. Mountain Oil declared bankruptcy and criminal charges were filed against Becker and Dalton.

Prior to trial, Dalton and the Callisters entered into a settlement agreement whereby certain civil claims against Dalton were dismissed. Dalton was released by the Callisters and by Mountain Oil of all liability claimed in bankruptcy court. Paul Callister, Jan Callister, and Robert Dalton all testified in Becker's trial.

Becker was charged in three separate informations with communications fraud, a

first degree felony; unlawful acts by a director, officer, or agent (unlawful acts), a third degree felony; and theft, a second degree felony, in violation of Utah Code Ann. § 76–6–404 (1990). The cases were consolidated and tried before a jury in April 1989. The jury returned verdicts of guilty of second degree communications fraud, guilty of unlawful acts, and not guilty of theft. Becker filed a motion for a new trial, and that motion was denied. Becker then moved the court to consider reduction of the offenses under Utah Code Ann. § 76–3–402 (1990). The court reduced the communications fraud conviction to a third degree felony, sentenced Becker on that conviction, and declined to impose sentence on the unlawful acts conviction.

On appeal, Becker claims the trial court erred in: (1) instructing the jury that second degree communications fraud was a necessarily included lesser offense of first degree communications fraud; (2) instructing the jury on the elements of the crime of unlawful acts, and in defining "agent;" and (3) denying his motion for a new trial based on exculpatory and newly discovered evidence.

## I. LESSER INCLUDED OFFENSE INSTRUCTION

Utah Code Ann. § 76–10–1801(1) (1990) provides, in pertinent part, as follows:

Any person who has devised any scheme or artifice to defraud another or to obtain from another money, property, or anything of value by means of false or fraudulent pretenses, representations, promises, or material omissions, and who communicates directly or indirectly with any person by any means for the purpose of executing or concealing the scheme is guilty of . . .

(d) a second degree felony when the value of the property, money, or thing obtained or sought to be obtained is more than $10,000 but does not exceed $100,-000;

(e) a second degree felony when the object of the scheme or artifice to de-

fraud is other than the obtaining of something of monetary value; and

(f) a first degree felony when the value of the property, money, or thing obtained or sought to be obtained is $100,-000 or more.

 In the information, Becker was charged with:

a first-degree felony, to wit: communications fraud, 76–10–1801, U.C.A. (1953) as amended, said defendant devised a scheme or artifice to defraud various people to obtain from another *money, property or anything of value* by means of false or fraudulent pretenses, representations, promises, or material omissions, and communicated directly or indirectly with various people for the purpose of executing or concealing the scheme or artifice, and *that the value of the property, money or thing obtained or sought to be obtained is $100,000.00 or more.*

(Emphasis added.) At the conclusion of trial, the judge instructed the jury as to the first degree felony, and, at the State's request, two lesser included offenses of second degree communications fraud. The first alternative was based on subsection (1)(d) in that the value of the property, money or thing obtained was more than $10,000 but less than $100,000. The second alternative was based on subsection (1)(e) in that the object of the scheme or artifice to defraud was other than the obtaining of something of monetary value. Becker objected to the jury being instructed that it was a necessarily included lesser offense if "the object of the scheme . . . is other than the obtaining of something of monetary value." The jury convicted Becker of having violated subsection (1)(e).

A required legal element of the crime of communications fraud is that the object of the fraud be proven. We agree with Becker that the object of the fraud for a second degree communications fraud under (1)(e) is different from the object of a first degree communications fraud under (1)(f).

We need not reverse on the erroneous instruction, however, since there was no evidence presented at trial to support Becker's conviction of communications fraud under subsection (1)(e). The State presented no evidence of an object of communications fraud "other than something of monetary value." In closing argument, the prosecutor stated:

... then its a communications fraud in the second degree because his objective is to obtain something other than monetary value. *What that is, I don't know, but if that['s what you [the jury] conclude, that he wasn't getting any money, then it becomes a second degree communications fraud.*

(Emphasis added.)

■ We conclude the State failed to meet its burden of proving beyond a reasonable doubt all of the requisite elements of subsection (1)(e). There was simply no evidence presented by the State at trial to sustain Becker's conviction. The conviction for communications fraud is therefore reversed, and the sentence vacated.[1]

Having reached this result, we need not address the other issues Becker has raised in attacking his conviction of communications fraud.

## II. UNLAWFUL ACTS OF AN AGENT

■ Becker also claims that the trial court erred in giving jury instructions 16 and 17, which explained the elements of the crime of unlawful acts by a director, officer, or agent, and defined the words "agent" and "director." However, he did not object to the jury instructions at trial. "Failure to object at trial precludes a challenge on appeal unless necessary to pre-

vent manifest injustice." *State v. John,* 770 P.2d 994, 995 (Utah 1989); Utah R.Crim.P. 19(c). "Manifest injustice" requires first that the error be obvious to a trial court that it was committing error, and second, that the error "be of sufficient magnitude that it affects the substantial rights of a party." *State v. Verde,* 770 P.2d 116, 122 (Utah 1989). Becker does not address either of these requirements. Therefore we make no finding of manifest injustice. Accordingly, the conviction under Utah Code Ann. § 76–10–706 (1990) is therefore affirmed.

## III. MOTION FOR A NEW TRIAL

■ Becker's last claim is that the trial court erred in not granting him a new trial. A motion for a new trial is governed by the standard set out in the Utah Rules of Criminal Procedure: a court may grant a new trial in the interest of justice if there is any impropriety that had a substantially adverse effect on the rights of a party. Utah R.Crim.P. 24(a). "The decision to grant or deny a new trial is a matter of discretion with the trial court and will not be reversed absent a clear abuse of that discretion." *State v. Williams,* 712 P.2d 220, 222 (Utah 1985).

Becker argues that, by withholding information regarding the civil settlement agreement Dalton and the Callisters had entered into prior to trial, the State withheld "exculpatory evidence." We do not agree since Becker does not show how this evidence is exculpatory. The settlement agreement was not contingent on the outcome of Becker's trial; its terms were binding regardless of whether Becker was convicted.

■ Becker also argues that the "newly discovered evidence" bore directly on

---

1. We do not remand to the trial court for a new trial on this issue because we reverse the conviction for insufficient evidence. When a reversal is for insufficient evidence, double jeopardy precludes a second trial. *See, e.g., State v. Musselman,* 667 P.2d 1061, 1065 n. 3 (Utah 1983) (when verdict set aside on appeal for insufficiency of evidence, defendant may not be retried); *State v. Sorenson,* 758 P.2d 466, 470 n. 4

(Utah Ct.App.1988) (discharge of defendant proper where reversal "based on a failure of proof rather than error in the trial proceedings"); *cf. State v. Lamorie,* 610 P.2d 342, 347 (Utah 1980) (reversal and remand for a new trial did not place defendant in double jeopardy where error was merely trial error, as distinguished from insufficiency of the evidence).

Dalton's credibility as a witness and thus should have prompted a new trial. We do not question that the settlement agreement, if known to Becker at trial, could have been appropriately explored in an effort to impeach Dalton's credibility. *See Slusher v. Ospital,* 777 P.2d 437, 441 (Utah 1989) (settlement agreements "which might influence testimony" are of "legitimate concern" to the jury). However, "[t]o justify a new trial, newly discovered evidence should clarify a fact that was contested and resolved against the movant, or be *sufficiently persuasive that the result of the trial might be changed."* *State v. Worthen,* 765 P.2d 839, 851 (Utah 1988) (citations omitted, emphasis added). When "new" evidence merely tends to impeach or discredit the testimony of a witness, as here, a new trial need not be granted. *Id.; Baker v. State,* 243 Kan. 1, 755 P.2d 493, 501 (1988). Accordingly, we are unable to conclude that the trial judge abused his discretion in denying Becker's motion for a new trial.

## IV. CONCLUSION

The conviction for the second degree communications fraud is reversed and the conviction on the third degree unlawful acts of a director, officer, or agent is affirmed.[2] The trial court's denial of Becker's motion for a new trial is also affirmed.

GARFF and ORME, JJ., concur.

2. We note that Becker was not sentenced for the unlawful acts conviction. In view of our disposition of the case, that issue now needs to be addressed to the trial court.