**STATE of Utah, Plaintiff and Appellee,**

v.

**Albert ROSS, Defendant and Appellant.**

**No. 970015–CA.**

Court of Appeals of Utah.

Dec. 26, 1997.

Scott L. Wiggins, Salt Lake City, for Defendant and Appellant.

Jan Graham and Barnard N. Madsen, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, Associate P.J., and BILLINGS and GREENWOOD, JJ.

BILLINGS, Judge:

Defendant Albert L. Ross appeals his conviction of eight counts of forgery, a third degree felony under Utah Code Ann. § 76–6–501(4) (Supp.1997), and one count of communications fraud, a second degree felony under Utah Code Ann. § 76–10–1801(1)(d) (Supp. 1997). We affirm in part and reverse in part.

## FACTS

In November 1995, defendant and two accomplices cashed more than thirty-five forged checks at stores in Weber and Davis Counties, Utah. All of the checks were cashed in the same manner. Defendant and

an unidentified man called "Nikki" would pick up a female accomplice, Susan Sanchez, in defendant's car. One of the men would hand Sanchez a forged check and false identification. Defendant would then drive to a store, and the two men would wait in the parking lot while Sanchez cashed the forged check and brought back the money. When Sanchez returned, she would give the money to Nikki, who would then divide it among the three accomplices.

On November 22, 1995, Sanchez tried to cash a check at an Albertson's grocery store but was detained and arrested. When defendant entered the store to look for Sanchez, he was also arrested. Defendant was charged with eight counts of third degree forgery and one count of second degree communications fraud. Sanchez pleaded guilty to two felonies arising from the forgeries and was sentenced before defendant's trial. Nikki was never apprehended.

At defendant's trial, Sanchez appeared as a State witness. She testified that she had cashed thirty-five to forty checks for defendant and Nikki over a three week period and that each check had been worth $300 to $700. In its opening statement, the State told the jury that Sanchez was a codefendant in the case, that she had pleaded guilty to and been sentenced for two felony counts arising from the forgeries, and that "she'll testify to you as to the nature of the plea and what consideration she was given by the State for the purposes of her testimony here today, and you can evaluate her testimony in light of that." Defendant's attorney made no objection to this statement, and the court gave no limiting instruction on the permissible evidentiary use of Sanchez's guilty plea.

The State established on direct examination that Sanchez had pleaded guilty to two felony counts, that she had already been sentenced, and that she had received no special treatment in return for her testimony against defendant. The State also argued in closing that, because Sanchez had already been sentenced and incarcerated for her two felony convictions, she had no motive to testify falsely against defendant. In contrast, defendant's attorney presented Sanchez's guilty plea both through cross-examination and in closing argument as evidence that she was a confirmed liar and criminal who had falsely accused defendant in order to obtain a better plea agreement.

After deliberation, the jury found defendant guilty on all nine charges. On November 18, 1996, the court sentenced defendant to zero-to-five years and a $5,000 fine for the eight forgery counts; one-to-fifteen years and a $10,000 fine on the single count of communications fraud, to be served concurrently; and restitution to be determined by the Department of Corrections. Defendant now appeals.

## ANALYSIS

Defendant raises three issues on appeal. First, he claims the trial court committed reversible error by failing to admonish the jury after the prosecutor presented evidence that Sanchez had pleaded guilty to charges in the same case. Second, he claims the State presented insufficient evidence at trial to establish his conviction for second degree communications fraud. Third, he claims his counsel at trial provided ineffective assistance by failing to seek dismissal of the communications fraud count, because it was a lesser-included offense of forgery, and conviction of both crimes exposed him to double jeopardy.

### I. Sanchez's Guilty Plea

Defendant argues the trial court erred in failing to admonish the jury after the State introduced Sanchez's guilty plea. Because defendant failed to raise this issue at trial, we must review the trial court's alleged failure for plain error. See, e.g., State v. Cook, 881 P.2d 913, 914 (Utah Ct.App.1994). "To establish plain error, a party must show the following: (1) an error exists; (2) the error should have been obvious to the trial court; and (3) the error was harmful, or in other words, absent the error, there is a reasonable likelihood of a more favorable result for the complaining party." State v. Reyes, 861 P.2d 1055, 1057 (Utah Ct.App.1993).

We do not think that error existed, let alone an error that should have been

obvious to the trial court.[1] The few Utah rulings on the admissibility of codefendant guilty pleas appear to suggest that *excluding* evidence of testifying codefendants' pleas may be reversible error. *See State v. Hackford*, 737 P.2d 200, 202–03 (Utah 1987) (holding trial court erred in limiting cross-examination about disposition of charges against testifying codefendant when such evidence might have established bias or motive); *State v. Patterson*, 656 P.2d 438, 438–39 (Utah 1982) (holding exclusion of dismissed charges against testifying codefendant was error because " 'exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination' ") (*quoting State v. Chesnut*, 621 P.2d 1228, 1233 (Utah 1980)); *State v. Vigil*, 661 P.2d 947, 948 (Utah 1983) (stating "[w]hile there is some question as to whether plea discussions and plea agreements should be admitted into evidence," once evidence of pleas was admitted without objection, trial court erred in limiting defense counsel's use of pleas in closing argument); *State v. Edwards*, 13 Utah 2d 51, 368 P.2d 464, 466 (1962) (holding court need not give cautionary instruction after admitting evidence defendant's wife pleaded guilty to prostitution charge arising from same incident as defendant's indictment for procurement). While these Utah cases establish no rule on limiting instructions, they clearly contemplate that evidence of a testifying codefendant's guilty plea is properly admitted to help the jury assess the codefendant's credibility, bias, and motive for testifying.

■ There is no Utah law requiring a limiting instruction in these circumstances, and certainly none holding that failure to give such an instruction is plain error. Utah courts have repeatedly held that a trial court's error is not plain where there is no settled appellate law to guide the trial court. *See, e.g., Eldredge*, 773 P.2d at 35–36 (rejecting claim of plain error where dispositive

appellate case not yet decided); *State v. Braun*, 787 P.2d 1336, 1341–42 (Utah Ct.App. 1990) (same).

Furthermore, other jurisdictions have reached no consensus on when a trial court's failure to issue cautionary instructions after admitting plea evidence will be reversed as plain error. The tenth circuit has held that failure to caution a jury after admitting a testifying codefendant's plea is not per se plain error, and reviewing courts must examine the record at trial in light of the following factors:

(1) whether there was a proper purpose in introducing the guilty plea; (2) whether the guilty pleas were improperly emphasized or used as evidence of substantive guilt; (3) whether the alleged error was invited by defense counsel; (4) whether the failure to object could have been the result of tactical considerations; and (5) whether, in light of all the evidence, the error was harmless beyond a reasonable doubt.

*United States v. Pedraza*, 27 F.3d 1515, 1526 (10th Cir.1994); *see also United States v. Davis*, 766 F.2d 1452, 1456–57 (10th Cir.1985) (holding failure to caution jury is not per se plain error and "the entire record must be examined to determine whether the trial court's failure to give the cautionary instruction was so egregious as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice").

A majority of circuits have similarly refused to find plain error in a court's failure to issue a sua sponte cautionary instruction. *See, e.g., United States v. Johnson*, 26 F.3d 669, 678 (7th Cir.1994) (stating court should give instruction if defense objects to plea evidence and requests instruction); *United States v. Hernandez*, 921 F.2d 1569, 1582 (11th Cir.1991) (failing to give sua sponte instruction is plain error only when State emphasizes codefendant plea "for no other reason than to prejudice the defendant");

---

**1.** Defendant cites *State v. Eldredge*, 773 P.2d 29, 38 n. 8 (Utah 1989) for the proposition that, even if the error in this case were not plain, we should correct it because it was so harmful to defendant. In *Eldredge*, however, the court upheld a conviction without addressing harm when it found no obvious error. Footnote eight merely emphasizes that the two-step plain error analysis is a guide for courts, not a straightjacket, and that in extreme cases courts may "dispense with the requirement of obviousness in the interests of justice." *Id.* at 34–35, nn. 8 & 11. This is not such a case.

*United States v. Ojukwa,* 712 F.2d 1192, 1193–94 (7th Cir.1983) (holding trial court's failure to give sua sponte cautionary instruction was not reversible error); *United States v. DeLucca,* 630 F.2d 294, 299 (5th Cir.1980) ("Only in those rare situations in which other 'aggravating circumstances' have exacerbated the prejudice will the failure to give cautionary instructions result in plain and reversible error."); *United States v. Rothman,* 463 F.2d 488, 490 (2d Cir.1972) (failing to give sua sponte instruction was not plain error because prosecution was entitled to raise pleas in opening statement and on direct examination to prevent defense from creating false impression that prosecution was concealing credibility evidence).[2]

■ In the case before us, evidence of Sanchez's pleas was admitted for the clearly proper purpose of informing the jury of her firsthand knowledge of the events at issue, her motivation and possible bias in testifying, and her overall credibility as a witness. The record does not indicate the State improperly emphasized her guilty pleas or used them as substantive evidence of defendant's guilt. The record also shows that Sanchez's plea was central to defense counsel's strategy of challenging Sanchez's credibility, and defense counsel's failure to object could thus have been strategic. Because of these factors, and because appellate law in Utah and other jurisdictions provided no clear guidelines on cautionary instructions, we cannot say it was error, let alone plain error, for the court to admit this evidence without a cautionary instruction.

## II. Insufficiency of Evidence

■ Defendant also urges us to set aside his conviction for communications fraud because, "other than the speculative and unclear testimony of Ms. Sanchez, the State presented no evidence that defendant sought to obtain property or money in excess of $5,000." We will set aside a jury verdict only if " 'the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element.' " *State v. Workman,* 852 P.2d 981, 984 (Utah 1993) (*quoting State v. Petree,* 659 P.2d 443, 444 (Utah 1983)). However, "[w]hen the evidence presented is conflicting or disputed, the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *Id.*

In the present case, the jury convicted defendant of communications fraud based on Sanchez's testimony that she had cashed thirty-five to forty checks for defendant, each worth over $300. Sanchez's testimony was supported by the physical evidence of nine forged checks recovered by the police and by circumstantial evidence linking defendant to the forgeries. If believed, Sanchez's testimony clearly established defendant's involvement in forgeries worth at least $10,500. Thus we find a reasonable jury could have concluded that Sanchez's testimony proved beyond a reasonable doubt defendant had forged or intended to forge checks for more than $5,000. We therefore affirm defen-

2. Only one circuit has consistently held that failure to issue cautionary instructions is plain error as a matter of law. *See, e.g., Bisaccia v. Attorney General,* 623 F.2d 307, 312 (3d Cir.1980) (holding admission of codefendant guilty pleas was fundamental violation of accused's constitutional rights). In contrast, most courts reversing for failure to admonish have based reversal on either the admission of plea information about codefendants who never testified as witnesses or clearly improper use of pleas to show guilt by association. In these cases, plain error occurred because the plea evidence was admitted for improper reasons. *See, e.g., United States v. Leach,* 918 F.2d 464, 467 (5th Cir.1990) ("Plain error exists when evidence of a guilty plea of a nontestifying co-conspirator is introduced."); *United States v. Dworken,* 855 F.2d 12, 15 (1st Cir.1988)

(holding admission of plea was error despite cautionary instruction when prosecutor used plea as substantive evidence in "birds of a feather" argument); *United States v. Griffin,* 778 F.2d 707, 710 (11th Cir.1985) (finding plain error when plea of nontestifying codefendant was " 'dragged in by the heels for the sake of its prejudicial effect' " (*quoting United States v. McRae,* 593 F.2d 700, 707 (5th Cir.1979))); *United States v. Baez,* 703 F.2d 453, 455 (10th Cir. 1983) (holding trial court erred in commenting on guilty plea of nontestifying codefendant); *United States v. Miranda,* 593 F.2d 590, 594–96 (5th Cir.1979) (holding plea admission without instruction was plain error because plea was admitted for improper purpose, unduly emphasized, not invited by defense, and clearly harmful).

dant's conviction of second degree communications fraud.

## III. Lesser–Included Offense

The final issue is whether defendant was impermissibly convicted of a lesser-included offense under Utah Code Ann. § 76–1–402(3) (1995).[3] Defendant argues his attorney at trial provided ineffective assistance of counsel and subjected him to unconstitutional double jeopardy by failing to argue communications fraud was a lesser-included offense of forgery.[4]

### A. Lesser–Included Offense Analysis

The prohibition on conviction for lesser-included offenses flows from the double jeopardy clauses of the Utah and the United States Constitutions. *See* Utah Const. art. I, § 12 ("[N]or shall any person be twice put in jeopardy for the same offense."); U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."). Thus, we interpret section 76–1–402(3) to comply with the underlying constitutional guarantees against double jeopardy. *See City of Logan v. Utah Power & Light Co.*, 796 P.2d 697, 700 (Utah 1990) ("[W]hen interpreting statutes, every effort should be made to interpret them as being consistent with the dictates of the constitution.").

Utah courts apply a two-tiered analysis to identify lesser-included offenses. *See State v. Hill,* 674 P.2d 96, 97 (Utah 1983). First we determine whether the lesser offense is "established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* If the two crimes are " 'such that the greater cannot be committed without necessarily having committed the lesser,' " then the lesser offense merges into the greater crime and the State cannot convict and punish the defendant for both offenses. *Id.* at 97 (quoting *State v. Baker,* 671 P.2d 152, 156 (Utah 1983)). In most cases, comparison of the statutory elements will suffice to determine whether a greater-lesser relationship exists. However, where the two crimes have multiple variations, we must look beyond the statutory elements and "consider the evidence to determine whether the greater-lesser relationship exists between the specific variations of the crimes actually proved at trial." *Id.* at 97.[5]

We find, and the parties conceded at oral argument, that a greater-lesser relationship may exist between some variations of third degree forgery and second degree communications fraud.[6] A person is guilty of second degree communications fraud if he (1) "has devised any scheme or artifice to defraud another," and (2) "communicates directly or indirectly with any person by any means for the purpose of executing or concealing the

---

**3.** Utah Code Ann. § 76–1–402(3) (1995) provides:

> A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when: (a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or (b) it constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or (c) it is specifically designated by statute as a lesser-included offense.

**4.** Defendant also initially argued that counsel should have requested the eight forgery counts be consolidated as a single continuous transaction under Utah Code Ann. § 76–6–403 (1995). However, defendant concedes that *State v. Patience,* 944 P.2d 381 (Utah Ct.App.1997), has established the theft consolidation rule does not apply to forgeries.

**5.** We apply the *Hill* test here because the issue is not whether the court could properly instruct the jury on both offenses (governed by *State v. Baker,* 671 P.2d 152 (Utah 1983)), but whether the jury could convict defendant of both offenses. The underlying issue in *Baker* and other jury instruction cases is whether the defendant had adequate notice that he might be charged with both crimes. In contrast, the issue in this case is whether conviction of both the greater and lesser offense exposes defendant to double jeopardy. We have held that this issue is properly resolved under *Hill. See Duran v. Cook,* 788 P.2d 1038, 1041 n. 2 (Utah Ct.App.1990).

**6.** Defendant, like the defendant in *State v. Bradley,* 752 P.2d 874, 877 n. 1 (Utah 1988) (per curiam), inadvertently reverses the order of the offenses, arguing second degree communications fraud is a lesser-included offense of third degree forgery. We believe the proper approach is to examine whether third degree forgery is included in second degree communications fraud.

scheme or artifice," (3) "when the value of the property, money, or thing obtained or sought to be obtained is or exceeds $5,000." Utah Code Ann. § 76–10–1801(1) (Supp. 1997). A defendant is guilty of third degree forgery if (1) "with purpose to defraud or with knowledge that he is facilitating a fraud"; (2) he "makes, completes, executes, authenticates, issues, transfers, publishes, or utters"; (3) "a check with a face amount of $100 or more." Utah Code Ann. § 76–6–501(4) (Supp.1997). Given these statutory elements, some variations of communications fraud clearly include forgery. For example, the State might prove a defendant committed communications fraud by showing that: (1) a defendant devised a scheme to defraud that involved passing forged checks; (2) the defendant communicated with another person for the purpose of executing the scheme by uttering or transferring a forged check worth at least $100, and; (3) the object of the scheme was in excess of $5,000. In such a case, third degree forgery, which requires only that a defendant knowingly utter a forged check worth over $100, would be established by "proof of the same or less than all the facts" required to prove second degree communications fraud. *Id.* § 76–1–402(3)(a). Consequently, forgery would be a lesser-included offense in this variation of communications fraud.

We now consider the evidence "to determine whether the greater-lesser relationship exists between the specific variations of the crimes actually proved at trial." *Hill*, 674 P.2d at 97. On the facts of this case, element one of third degree forgery is clearly included in element one of second degree communications fraud; once the jury found that defendant had "devised a scheme to defraud," it could not avoid finding that defendant had "knowledge that he [wa]s facilitating a fraud." *See* Utah Code Ann. §§ 76–10–1801(1), –6–501(1). Similarly, once the jury accepted Sanchez's testimony and the cashed

checks to establish element three of communications fraud, no additional finding was needed to establish element three of forgery. On the facts of this case, only element two of communications fraud ("communication" to another person) and element two of forgery ("utterance" of a forged check) are potentially independent of each other. Thus, defendant's forgery conviction will necessarily merge into his communications fraud conviction unless the jury was instructed on and the State proved separate factual bases for the elements of "utterance" and "communication."

Defendant claims that "[a]s applied to the facts and evidence presented at trial ... [the forgery element of] utterance can and should be equated with the communication element of communications fraud." Defendant points to several instances in the record where the State told the jury that the "utterance" of a forged check provided the factual basis on which it should find that defendant made a "communication" as required by the communications fraud statute.

The State concedes that it explicitly told the jury that it could find a "communication" based on the same action (handing Sanchez a check) that proved the "utterance" requirement of forgery. However, the State argues we must uphold defendant's forgery conviction despite these statements as long as the jury could reasonably have found independent factual bases for the required elements of "utterance" and "communication." The State claims it advanced a theory of communications fraud at trial under which a jury could reasonably find that defendant committed the "communication" element of communications fraud when he solicited Sanchez to cash checks for him. The State asserts correctly that under this theory of the two crimes the jury could have returned both convictions without subjecting defendant to double jeopardy.[7] Thus, we must determine

---

7. We do not address whether this theory of communications fraud is a legitimate use of Utah Code Ann. § 76–10–1801(1) (Supp.1997). In effect, the State urges us to turn a relatively narrow anti-fraud statute into a broad de facto conspiracy provision. This transformation is wholly unsupported by existing case law; reported cases supporting communications fraud convictions deal with securities and investment fraud, corporate embezzlement, racketeering, and computer fraud. *See, e.g., State v. Kent*, 945 P.2d 145, 146 (Utah Ct.App.1997) (basing conviction on scheme to defraud insurance company by altering computer records); *State v. Thorup*, 841 P.2d 746, 747 (Utah Ct.App.1992) (basing conviction on racketeering and computer fraud scheme); *State*

whether the State's case, as actually presented at trial, would have enabled the jury to convict defendant on this theory of the two crimes.

The Utah Supreme Court faced a similar issue in *State v. Bradley*, 752 P.2d 874 (Utah 1988) (per curiam). In *Bradley*, a defendant entered his tenant's apartment and evicted him at gunpoint. *See id.* at 873–76. At trial the State charged the defendant with aggravated burglary and aggravated assault, and the jury returned convictions on both offenses. *See id.* at 876. After a close examination of the evidence, arguments, and instructions given at trial, the supreme court held that, while burglary and assault are generally separate offenses, Bradley's aggravated assault conviction constituted double jeopardy under the peculiar facts of that case. On rehearing, the court articulated the following rationale for finding a lesser-greater relationship between the variations of the two crimes proved at trial:

> As a theoretical proposition, a defendant could commit an aggravated burglary without committing an aggravated assault. Aggravated burglary may require no more than that the burglar be "armed with a deadly weapon."
>
> ... However, aggravated burglary may also be accomplished when the burglar "uses or threatens the immediate use of a dangerous or deadly weapon against any person who is not a participant in the crime." When that element is relied upon by the prosecution to prove aggravated burglary, aggravated assault is simultaneously proven.
>
> In the instant case, instructions given to the jury on aggravated burglary adopted the latter alternative, namely, that defendant "use[d] or threaten[ed] the immediate use of a dangerous or deadly weapon against any person."

... Since *the jury was not required to find any additional elements* to convict defendant of aggravated assault once it had found him guilty of aggravated burglary, we correctly affirmed the conviction of aggravated burglary, a first degree felony, and vacated the conviction of aggravated assault, a third degree felony, as being surplusage.

*Id.* at 878 (emphasis added)(alterations in original) (citations omitted).

■ *Bradley* establishes a test for whether the theory of two crimes argued at trial has created a lesser-greater relationship: After convicting on the greater offense, was the jury "required to find any additional elements" before it could convict on the lesser offense? *Id.* If the jury was not required to find any additional element, then the lesser crime merges into the greater one, and the defendant may not be convicted of both. *See id.*

Nonetheless, the State argues that *Bradley* requires us to uphold defendant's forgery convictions as long as the jury could reasonably have found the "communication" element of communications fraud without relying on the same acts used to support the "utterance" element of forgery. We disagree. *Bradley* does not permit us to uphold conviction of a lesser offense merely because the jury could have found an additional element. Rather, *Bradley* demands that we reverse the lesser offense conviction unless the jury was "required to find" the additional element. *Id.* Thus we may uphold defendant's forgery convictions only if we find that a reasonable jury would have understood, based on the instructions and evidence at trial, that it had to find an additional element beyond the elements of communications fraud before it could convict defendant of forgery.

*v. LeFevre*, 825 P.2d 681, 684 (Utah Ct.App.1992) (basing conviction on complex banking fraud by means of check floating system); *State v. Becker*, 803 P.2d 1290, 1291 (Utah Ct.App.1990) (basing conviction on falsification of corporate records to cover up accomplice's embezzlement). In these cases, the "communication" element was satisfied by some act, not illegal per se, done to further a complex fraud scheme that resulted in grant of title under false pretenses and would

have been unreachable under traditional theft statutes. In contrast, prosecuting simple forgery as communications fraud creates a de facto conspiracy provision that punishes defendants both for committing and soliciting the forgery, a possible violation of Utah Code Ann. § 76–1–402(3)(b) (Supp.1997) ("A defendant ... may not be convicted of both the offense charged and ... an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged....").

■ In this case, the jury convicted defendant of communications fraud and forgery on the basis of nine forged checks, testimony, and circumstantial evidence linking him to the forgeries. This evidence established the following sequence of events: Defendant and Nikki solicited Sanchez to cash checks for them; Sanchez cashed at least $5,000 in forged checks for the two men; in cashing the checks, defendant and Nikki drove Sanchez to local stores, gave her the forged checks, and waited while she cashed them; Nikki then divided the stolen money among the three accomplices. No evidence at trial established any other link between defendant and the forgeries. The State presented no evidence that defendant himself had obtained, altered, or signed the checks. The State conceded that Sanchez alone had presented the checks for payment. On the evidence at trial, defendant's only connections to the crime were the acts of soliciting Sanchez to present the checks, driving Sanchez to the stores, and handing her the forged checks.

Neither the facts presented nor the instructions given focused the jury on its ability to convict defendant of communications fraud based on the communications made to solicit Sanchez's participation in the scheme. Defendant testified at trial that he had no involvement at all with the forgeries, and he believed Sanchez had fingered him to protect her true accomplice. Although the State argued that defendant participated in soliciting Sanchez to cash the checks, the State presented no evidence at all that defendant made any "communication" for this purpose.

According to Sanchez's testimony, defendant was not even present at the first meeting where she was asked to cash a check. Sanchez testified that she met a "red-headed lady" who asked her to cash a check. After Sanchez consented, the two women met Nikki and defendant, who drove them to the store where the check was cashed. A few days later, Nikki and defendant visited Sanchez at her home. Sanchez's account of this meeting underscores the State's failure to focus on whether defendant made a "communication" to her:

Q: ... Did you have any discussions at that time relating to the checks?

A: Yeah.

Q: Okay. Was there anything requested of you at that time?

A: Just to cash the checks.

At no point in the trial did the State present evidence that defendant, rather than Nikki, asked Sanchez to cash the checks. In fact, the State never elicited testimony that defendant made any communication whatsoever during the solicitation process.

Final jury instructions listed the elements of each crime as follows:

The elements of the crime are set forth in the following instructions: Before you can convict the defendant, Albert L. Ross, of the crime of forgery as charged in Count 1 of the Information you must find from the evidence beyond a reasonable doubt all the following elements of the crime: Number one, that on or about the 4th day of November, 1995 in Davis County, State of Utah, a check on the account of American International Aerospace Manufacturing, Inc., with a face amount of $467 was uttered or presented for the payment of cash; and, two, that said check was forged and that it had been made without authority of American International Aerospace Manufacturing, Inc., and purported to be the act of said corporation; and, three, that the defendant, Albert L. Ross, was a party to the utterance or presentment of the check for money; four, that said defendant, Albert Ross, did participate in the transaction with the purpose to defraud anyone with knowledge that he was facilitating a fraud to be perpetrated; and, five, that Albert Ross acted intentionally or knowingly.... [8]

Before you can convict the defendant[,] Albert L. Ross[,] of the crime of communications fraud as charged in count nine of the Information, you must find from the evidence beyond a reasonable doubt all the

8. Because the eight forgery counts presented identical facts and elements aside from the signatures and values of the checks and the dates and places of presentment, we omit the instructions on counts two through eight.

following elements of the crime: One, that during the month of November, 1995, the defendant was in Davis and Weber County, State of Utah; two, that during that time the defendant developed a scheme or artifice to defraud another to obtain money from another; three, that the means used by the defendant to obtain the money was false or fraudulent pretenses, representations, or material omissions; four, *that during that time the defendant did communicate directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice;* five, that the value of the property, money or thing to be obtained was in excess of $5,000; six, that the defendant acted intentionally or knowingly or with reckless disregard for the truth....

Communications fraud is a felony of the second degree, when the value of the property, money, or thing obtained or sought to be obtained is or exceeds $5,000. To communicate means to bestow, convey, make known, recount, impart, to give by way of information, to talk over, or to transmit information. *Means of communication include but are not limited to the use of the mail, telephone, telegraph, radio, television, newspaper, computer in spoken and written communication.*

*A writing includes a check.* A writing is a check if it is a draft drawn on a bank and payable on demand. To utter a check is to present for the payment of money or to deliver the check in exchange for money. To defraud is simply to cheat.

(Emphasis added.) These instructions defined both offenses broadly. Furthermore, the instruction stating that "a writing includes a check" strongly suggested that the "communication" of communications fraud was the "utterance" of a written check. Clearly, a reasonable jury would assume, having heard this instruction, that the forged check was a "communication" sufficient to satisfy the "communication" element of communications fraud. We see nothing in these instructions that would require the jury to find an additional element before convicting defendant of forgery.

The State's closing arguments reinforced this theory of the offenses at trial. In closing, the State actively encouraged the jury to find that by transferring (or helping Nikki transfer) the forged checks to Sanchez, defendant had committed both a "communication" and an "utterance":

Now, one of the things about communications fraud that you don't have to show is when the communication took place. *In this particular instance, the communication is the check itself, it is the writing that is being presented to the merchant.* But you don't have to show that they obtained the property. What you do have to show is that the scheme was designed for the purposes and with the intent to obtain by fraudulent means the property of another. So, even though they completed the act in most instances here, you don't have to prove that part....

(Emphasis added.)

Under this theory of the case, which is the only theory the State actually put before the jury, the State never told the jury that it must or even should find a basis in fact for the "utterance" beyond the evidence already used to prove the "communication". On the contrary, the State explicitly told the jury that "in this particular instance, the communication is the check itself, it is the writing that is being presented to the merchant."

We have decided this case on its unique factual circumstances. Clearly, in a different factual scenario, forgery could be proven as a separate offense not included in communications fraud. In this case, however, forgery *is* a lesser-included offense because, on the evidence, arguments, and instructions at trial, a reasonable jury would have believed it could satisfy both the "communication" element of communications fraud and the "utterance" element of forgery by finding that defendant transferred the checks to Sanchez. Because the jury was not required to find any additional elements to convict defendant of forgery, we hold that defendant's forgery convictions were lesser-included offenses of communications fraud.

**246**

### B. Ineffective Assistance of Counsel

We must now address whether defendant received ineffective assistance of counsel, as this is how defendant raises his lesser-included offense claim on appeal.[9] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to establish such a failure, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," and that "the counsel's errors were so serious as to deprive the defendant of a fair trial ... whose result is reliable." *Id.* We first examine whether counsel's assistance at trial "fell below an objective standard of reasonable professional judgment." *Bundy v. Deland*, 763 P.2d 803, 805 (Utah 1988).

■ Knowledge of the law is a basic prerequisite to providing competent legal assistance. If an attorney does not investigate clearly relevant law, then he or she has objectively failed to provide effective assistance. *See State v. Crosby*, 927 P.2d 638, 645–46 (Utah 1996) (holding failure to request consolidation of theft counts under Utah Code Ann. § 76–1–402(1) (Supp.1997) was ineffective assistance because existing case law supported consolidation).

■ In this case a reasonable investigation would have alerted counsel that his client might be facing double jeopardy. First, section 76–1–402(3)(a) states that a crime is a lesser-included offense when "it is established by proof of the same or less than all the facts required to establish the commission of the greater offense." Second, *Hill* clearly established that when crimes have multiple variations, some variations may be lesser-included offenses. *See Hill*, 674 P.2d at 98. Third, *Bradley* laid out a test under which defendant's forgery charges were lesser-included offenses on the facts the State

presented at trial. *See Bradley*, 752 P.2d at 878. Fourth, the State in this case consistently argued a theory of defendant's crime in which the forgery counts were proven by fewer than all the elements required to prove communications fraud. We conclude that counsel's assistance fell below an objective standard of professional competence. We have already found defendant's forgery convictions were improper, and thus we conclude that counsel's failure was prejudicial. Accordingly, we hold defendant received ineffective assistance of counsel, resulting in eight improper convictions of the lesser-included offense of forgery.

"When a defendant has been improperly convicted of both a greater and a lesser offense, it is appropriate to regard the conviction on the lesser offense as mere surplusage, which does not invalidate the conviction and sentence on the greater offense." *Hill*, 674 P.2d at 98. We therefore reverse defendant's eight forgery convictions and remand for resentencing on the remaining conviction of second degree communications fraud.

### CONCLUSION

We conclude the trial court did not commit plain error in failing to issue a cautionary instruction to the jury after the State introduced evidence of Sanchez's guilty pleas arising from the same case. We also conclude that defendant's conviction of second degree communications fraud is supported by sufficient evidence. We hold, however, that under the facts of this case third degree forgery was a lesser-included offense of second degree communications fraud. We therefore vacate defendant's forgery convictions and remand for resentencing.

WILKINS, Associate P.J., and GREENWOOD, J., concur.

9. Courts have also addressed lesser-included offense claims under the rubric of reversible error. *See, e.g., United States v. Rising*, 867 F.2d 1255 (10th Cir.1989); *State v. Branch*, 743 P.2d 1187 (Utah 1987).