2017 UT App 179

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
THOMAS J. VU,
Appellant.

Opinion
No. 20151075-CA
Filed September 21, 2017

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 141400723

Teresa L. Welch, Attorney for Appellant

Sean D. Reyes , Jennifer Paisner Williams, and
Marian Decker, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and JILL M. POHLMAN concurred.

ORME, Judge:

¶1     Thomas J. Vu appeals his convictions for possession of a controlled substance with intent to distribute, a second degree felony, *see* Utah Code Ann. §§ 58-37-4(2)(b)(iii)(B), -8(1)(a)(iii), -8(1)(b)(i) (LexisNexis 2016), and possession of a firearm by a restricted person, also a second degree felony, *see id.* § 76-10-503(2)(a) (2012). Vu challenges his convictions, arguing that his trial counsel was ineffective, that the trial court erroneously admitted evidence of controlled purchases, and that there was insufficient evidence that he constructively possessed both a controlled substance and a firearm. We affirm.

¶2     Over the course of six weeks, a detective supervised five controlled purchases of methamphetamine from Vu using a

confidential informant.[1] Prior to each purchase, the confidential informant called Vu to arrange a transaction while the detective monitored the conversation.

¶3      Four of the five controlled purchases took place at the same apartment complex, and three of them occurred in the same apartment. The other controlled purchase took place at a gas station, where the detective observed Vu driving a Nissan Altima. During these transactions, the confidential informant witnessed Vu smoke methamphetamine, saw Vu with an "abnormal amount of U.S. currency," and noticed that Vu possessed a handgun, which was hidden behind a panel underneath the center console of the Altima.

¶4      Based on this information, the detective obtained a search warrant for the three-buy apartment and the Altima. The apartment belonged to a woman, who told officers that Vu had been staying at the apartment for "a couple of months." Similarly, Vu was not the registered owner of the Altima. Instead, the registered owner informally leased it to Vu.

¶5      When officers searched the apartment, five people, including Vu, were inside it, two of whom had outstanding warrants. The officers found Vu alone in a bedroom. He appeared to be high on methamphetamine and "very out of it." On the floor next to him was a black pouch containing three plastic bags with a total of thirty-one grams of methamphetamine.[2] In that same room, officers found a bag of

---

1. In exchange for her assistance, the State dropped felony fraud and forgery charges pending against the confidential informant.

2. The detective testified at trial that this was a distributable amount.

marijuana, mail addressed to Vu,[3] a casino player's card in Vu's name, and men's clothing in the closet. Elsewhere in the apartment, officers discovered documents belonging to other individuals and a ledger containing a series of numbers.

¶6    Regarding the Altima, officers had attached a tracking device to the vehicle and noted that it was driven to and from the apartment in "a consistent pattern." The detective and other officers also conducted physical surveillance on the vehicle and saw Vu driving it on numerous occasions. When the officers ultimately searched the vehicle, they discovered a handgun on the floor behind the front center console—the same place where the confidential informant claimed to have seen a gun. Vu was not the registered owner of the handgun, nor had it been reported stolen. The officers also found an airsoft gun[4] in the back of the car.

¶7    Vu was charged with one count of possession of a firearm by a restricted person, one count of possession of a controlled substance with intent to distribute (methamphetamine), and one count of possession of a controlled substance (marijuana). At trial, Vu challenged the admissibility of the confidential informant's testimony regarding the controlled purchases. The trial court overruled Vu's objection and admitted the testimony. Afterward, the parties stipulated that Vu was a "Category I restricted person," obviating the need for the State to present evidence that Vu was a convicted felon. The trial court accepted the stipulation and stated that the court would "include an

---

3. The address on Vu's mail did not match the apartment's address.

4. Airsoft guns are replicas of firearms that use compressed air to shoot "spherical non-metallic pellets." *Airsoft*, *YourDictionary*, http://www.yourdictionary.com/airsoft [https://perma.cc/7RV3-CR6A].

instruction for the jury on what to do with the stipulated fact." An instruction referring to Vu as a "Category I restricted person" was eventually presented to the jury without objection from Vu. Following a two-day trial, the jury convicted Vu of possession of a controlled substance with intent to distribute and possession of a firearm by a restricted person. But the jury acquitted Vu of the marijuana possession charge. The trial court sentenced Vu to two concurrent, indeterminate prison terms of one to fifteen years. Vu appeals.

¶8      Vu first argues that his trial counsel performed deficiently by not requesting a separate trial on the firearms charge. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law," *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162, which we consider de novo. Alternatively, he contends it was plain error for the trial court not to have ordered separate trials sua sponte.

¶9      Vu next contends that the trial court erroneously admitted evidence of the controlled purchases by the confidential informant. "Appellate courts review a trial court's decision to admit character evidence and prior bad acts under an abuse of discretion standard." *State v. Leber*, 2009 UT 59, ¶ 12, 216 P.3d 964.

¶10     Finally, Vu argues that the State did not present sufficient evidence to prove that he constructively possessed a controlled substance with the intent to distribute it or a firearm. "The standard of review for a sufficiency claim is highly deferential to a jury verdict." *State v. Workman*, 2005 UT 66, ¶ 29, 122 P.3d 639. "[W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94.

¶11     Vu first argues that he was denied a fair trial because the firearm charge was not tried separately from the possession charges. As a result, Vu maintains that he was prejudiced

because the jury was informed of his restricted status. Although Vu concedes that this argument was not preserved for appeal, he argues that review is warranted based on plain error and ineffective assistance of counsel.

¶12 "To demonstrate plain error, a defendant must establish that '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant[.]'" *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (first alteration in original) (quoting *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993)).

¶13 Vu has not satisfied the second prong of the plain error test, namely, that the claimed error should have been obvious to the trial court. To establish obviousness of an error, the appellant "must show that the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276. "Thus, an error is not obvious if 'there is no settled appellate law to guide the trial court.'" *State v. Davis*, 2013 UT App 228, ¶ 32, 311 P.3d 538 (quoting *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997)).

¶14 Vu has not directed us to any authority to support his argument that Utah precedent "mandated the bifurcation of the possession of a firearm by a restricted person charge." In fact, the only case Vu cites in relation to bifurcation in a case with a weapons charge is *State v. Reece*, 2015 UT 45, 349 P.3d 712, where a trial court elected to try a weapons charge separately from other charges. *Id.* Although the Utah Supreme Court approved of the trial court's bifurcation in that case, it did not go so far as to require bifurcation every time a restricted defendant is charged with both possession of a firearm and another crime. Additionally, the *Reece* court noted that the defendant was not prejudiced because the bifurcation "prevented the jury from ever learning that [the defendant] was a convicted felon." *Id.* ¶ 19.

Here, trial counsel's stipulation had substantially the same effect, as the jury was never informed of Vu's felony conviction.[5]

¶15 In sum, because Utah law does not mandate a separate trial of a weapons charge, we cannot say that any error the trial court made was obvious. We therefore conclude that the trial court did not plainly err when it did not bifurcate Vu's weapons charge and his drug charges into different proceedings.

¶16 Vu also contends that he is entitled to relief based on ineffective assistance of counsel. "To succeed on a claim of ineffective assistance of counsel, a defendant must show both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *State v. Edgar*, 2017 UT App 53, ¶ 9, 397 P.3d 670 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

---

5. While insisting that his drug and weapons charges should have been tried separately, within the context of his single trial Vu has not shown that his trial counsel had "no conceivable tactical basis" for stipulating to his restricted status. *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (emphasis omitted) (citation and internal quotation marks omitted). To begin with, there are numerous reasons an individual could be restricted from possessing a firearm. *See* Utah Code Ann. § 76-10-503 (LexisNexis 2012). But more to the point, absent the stipulation the State would have presented evidence that Vu was a convicted felon. With the stipulation, the jury did not hear any details regarding Vu's conviction, nor was it informed of the conviction itself. Moreover, the stipulation played into defense counsel's trial strategy because, in his closing argument, he referred to Vu's restricted status for the purpose of appearing candid and forthright with the jury, telling the jury "we don't hide the ball from you" and pointing to the disclosure of Vu's restricted status as an example.

¶17 No valid purpose seems to have been served by counsel's decision not to request bifurcation of the drug and weapons charges. Still, even assuming this was deficient performance on the part of Vu's trial counsel, Vu has not demonstrated that this deficient performance prejudiced him. After all, the jury did not hear any of the details concerning Vu's prior felony conviction. It did not even learn that he had a prior felony conviction. While learning of Vu's restricted status without additional explanation could cause the jury to speculate as to the reason behind it, a mere possibility of speculation is not sufficient to demonstrate prejudice. *See Reece*, 2015 UT 45, ¶ 75 (concluding that jurors could have inferred circumstances other than a prior criminal history as the reason the defendant was charged with a firearms violation). And while the evidence against him on two charges was overwhelming, *see State v. Alfatlawi*, 2006 UT App 511, ¶ 30, 153 P.3d 804 (holding counsel's ineffective assistance did not result in prejudice to defendant because evidence of guilt was overwhelming), the discerning jury took care in applying the court's instructions to the evidence and acquitted him of a third charge, further dispelling the suggestion that the jury was unduly influenced by the references to Vu's status as a restricted person. Thus, we conclude that Vu has not demonstrated that counsel's failure to request bifurcation prejudiced him.

¶18 Vu next contends that the trial court "committed reversible error in admitting improper prejudicial character evidence of five controlled buys between Vu and a confidential informant."[6] Rule 404(b) of the Utah Rules of Evidence instructs

---

6. Vu also contends that "the State did not prove by a preponderance that the controlled buys occurred," claiming that the testimony of the confidential informant was unreliable because she was a drug addict and was convicted of numerous crimes, including mail fraud, identity fraud, forgery, and attempted use of a financial transaction card. Although the confidential informant's credibility could surely be questioned,

(continued…)

that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). Evidence of bad acts may be admitted, however, for other noncharacter purposes, so long as it is not "being offered . . . to prove bad character or to show that a person acted in conformity with that character." *State v. Pullman*, 2013 UT App 168, ¶ 31, 306 P.3d 827 (citation and internal quotation marks omitted). *See* Utah R. Evid. 404(b)(2).

¶19 To demonstrate that Vu possessed a controlled substance with intent to distribute, the State was, of course, required to establish that Vu intended to distribute the methamphetamine. *See State v. Fox*, 709 P.2d 316, 318 (Utah 1985) ("A conviction for possession of a controlled substance with intent to distribute requires proof of two elements: (1) that defendant knowingly and intentionally possessed a controlled substance, and (2) that defendant intended to distribute the controlled substance to another."). Evidence of the controlled purchases established that Vu, on three occasions, sold methamphetamine to the confidential informant from the same apartment where police later discovered him next to a distributable amount of methamphetamine. The evidence also revealed that Vu had sold methamphetamine to the confidential informant on another two occasions. Because evidence of prior bad acts may be admitted

---

(…continued)

the detective corroborated much of the information that she provided. Additionally, "the jury serves as the exclusive judge of . . . the credibility of witnesses." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). *Accord State v. Prater*, 2017 UT 13, ¶ 31, 392 P.3d 398. The jury was aware of the charges that were dropped against the confidential informant, and Vu had ample opportunity to attack her credibility during cross-examination by questioning her about her deal with the State, her prior convictions, and her drug addiction.

for any noncharacter purpose, we conclude the trial court did not err, much less abuse its discretion, when it admitted evidence of Vu's previous drug sales to help establish his intent to distribute the methamphetamine found in his close proximity.[7]

¶20 Finally, Vu argues that there was insufficient evidence he "constructively possessed either a controlled substance with the intent to distribute it or a firearm on the day the search warrant was executed." We reverse a criminal conviction for insufficient evidence "only when the evidence is so inconclusive or so inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime." *State v. Goddard*, 871 P.2d 540, 543 (Utah 1994) (citation and internal quotation marks omitted).

¶21 Vu first contends that the State failed to prove that the methamphetamine belonged to him, alleging that it could have belonged to any of the four other individuals in the apartment at the time the warrant was executed. "To find that a defendant had constructive possession of a drug or other contraband, it is necessary to prove that there was a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug." *Fox*, 709 P.2d at 319. Although the

---

7. For the same reason, we conclude that the probative value of this evidence was not substantially outweighed by its danger of unfair prejudice. *See* Utah R. Evid. 403. The evidence was highly probative, as it was offered to prove that Vu intended to distribute the methamphetamine in his possession. While this evidence was certainly prejudicial, it was not unfairly prejudicial—it did not have "an undue tendency to suggest decision on an improper basis." *See Woods v. Zeluff*, 2007 UT App 84, ¶ 7, 158 P.3d 552 (citation and internal quotation marks omitted).

apartment was not rented to Vu, the woman who leased the apartment informed the detective that Vu had been staying at that apartment for a "couple of months," and, based on the information obtained from the tracking device installed on the Altima, it is where Vu spent most of his nights.

¶22 When officers executed the warrant, they found a distributable amount of methamphetamine next to Vu in a room in which he was the only occupant. *See id.* at 320 ("Where one possesses a controlled substance in a quantity too large for personal consumption, the trier of fact can infer that the possessor had an intent to distribute."). At that same time, Vu appeared to be high on methamphetamine. The room also contained Vu's mail, a casino player's card in his name, and men's clothing in the closet. Most importantly, Vu had sold methamphetamine to the confidential informant three times from that same apartment. This is an adequate basis from which the jury could infer that Vu exercised dominion and control over the drug. *See id.* at 319 (listing factors that support a finding of constructive possession, while noting that constructive possession "depends upon the facts and circumstances of each case"). When viewing the evidence in the light most favorable to the verdict, we cannot say that the jury's inference was "so inherently improbable" as to require reversal. *See Goddard*, 871 P.2d at 543 (citation and internal quotation marks omitted).

¶23 Vu also contends that there is insufficient evidence to support the jury's conclusion that he possessed a firearm. Specifically, Vu claims the evidence did not establish that he occupied the vehicle exclusively or that he was aware of the firearm's presence. But the State was required to establish only that Vu had constructive possession of the firearm, not that he had exclusive possession of the vehicle. *See Fox*, 709 P.2d at 319. The officers personally observed Vu driving the Altima on multiple occasions, and they also used a tracking device to monitor the vehicle as it was driven in "a consistent pattern" to and from the apartment complex where Vu was staying. The

confidential informant also saw Vu installing a new sound system in the vehicle—an action typical of one who exercises dominion and control over a vehicle but atypical of one who only occasionally borrows it. On that same occasion, the confidential informant witnessed Vu remove drugs from behind the center console, and she saw that the drugs had been alongside a firearm. This was the same location where officers later discovered a firearm. Again, while these facts do not compel the conclusion that the firearm was Vu's or that the firearm the confidential informant saw was this same handgun, when viewing the facts in a light most favorable to the verdict, we cannot say that the jury "must have entertained a reasonable doubt" that the handgun was in Vu's constructive possession. *See Goddard*, 871 P.2d at 543 (citation and internal quotation marks omitted).

¶24     Affirmed.[8]

———————

8. Because we conclude that the trial court did not err in any respect, we necessarily reject Vu's argument that "cumulative errors require reversal."