2017 UT App 92

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ANTHONY TODD ALLGOOD,
Appellant.

Opinion
No. 20150369-CA
Filed June 8, 2017

Second District Court, Farmington Department
The Honorable David R. Hamilton
No. 131700297

Nathan K. Phelps, Attorney for Appellant

Sean D. Reyes and Mark C. Field, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

TOOMEY, Judge:

¶1      Anthony Todd Allgood appeals his convictions for
aggravated sexual abuse of a child, forcible sodomy, rape, and
forcible sexual abuse. Allgood asks us to vacate his convictions,
arguing they rest on false testimony and that he received
ineffective assistance of counsel. We affirm.

BACKGROUND

¶2      "On appeal, we review the record facts in a light most
favorable to the jury's verdict and recite the facts accordingly."
*State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal
quotation marks omitted). "We present conflicting evidence only
as necessary to understand issues raised on appeal." *Id.*

¶3     Allgood was charged with several felonies based on his sexual abuse of his stepdaughter (Victim). After a jury trial, Allgood was convicted of aggravated sexual abuse of a child, forcible sodomy, two counts of rape, and three counts of forcible sexual abuse.

*The Abuse*

¶4     Allgood began sexually abusing Victim when she was about eight or nine years old and continued to do so until she was seventeen years old. The abuse began with fondling but eventually escalated to oral and vaginal sex. Nearly all of the abuse occurred in Victim's bedroom under the guise of Allgood tucking her into bed for the night, even during Victim's teenage years. Although Victim suffered years of abuse, she was afraid to report it because her mother (Mother) loved and trusted Allgood and the family relied on his income.

¶5     Eventually Mother, Victim's brother (J.S.), and J.S.'s girlfriend (A.S.) grew suspicious of Allgood's behavior toward Victim. For example, Allgood spent considerable time tucking Victim into bed—sometimes up to two hours—often locking her bedroom door behind him. When confronted by Mother or J.S. about spending so much time in Victim's room, Allgood usually responded that he had fallen asleep, that Victim had fallen asleep on his arm, or that they had just been talking. In addition, Allgood often cuddled with Victim while they watched movies and held her hand while they walked or drove in the car.

¶6     In September 2010, Victim started dating a boy (Boyfriend). A.S. testified at trial that Allgood was jealous of Boyfriend's relationship with Victim and would not let them have much time to themselves "like a boyfriend and girlfriend would have." Mother testified that when Allgood saw them kissing, "you could just see the steam come off him."

¶7     After finding Victim's bedroom door locked one night while Allgood was tucking her in, Mother "banged on the door" and confronted Allgood. Mother asked him if he loved Victim

"in a way that [he] shouldn't." Allgood assured Mother that nothing was going on and claimed she was "just being irrational." On several occasions Mother accused Allgood of behaving inappropriately with Victim. Allgood usually responded by asking, "Why would I do that? I love you." Despite Mother's suspicions, Allgood's explanations and reassurances kept her from contacting the police until much later.

¶8    On another occasion, while Victim was practicing driving with Allgood late at night,[1] Allgood "reached over and started groping [her] breasts, and that's when a cop pulled [them] over." The officer separated the two and put Victim in his police cruiser because he observed them in a "compromising position." "[F]rozen with fear," Victim told the officer that Allgood was teaching her how to drive and that nothing else was going on. The officer called Mother and explained he had pulled over Victim and Allgood and that the situation did not "feel right." Mother asked to speak with Victim and was allowed to, but Victim reiterated that she was just out practicing driving. Despite his reservations, the officer let the two drive home.

¶9    Instead of questioning Allgood about the incident, Mother called Allgood's brother. She told him what had happened and explained that the officer felt something "suspicious [was] going on." Although Mother was concerned, she asked him to talk to Allgood because she had already accused Allgood of inappropriate behavior and she did not want to be accused again of being irrational.

¶10    After ten years of being sexually abused, Victim told her best friend (C.M.) that Allgood was abusing her. Although C.M. believed Victim was telling the truth, she did not report the

---

1. At this point, Victim had a permit to drive and was in the process of completing the required number of hours of driving time to obtain a driver license.

abuse because she was shocked by the news and did not know what to do. About a month later, Victim told A.S. about it. Victim was helping A.S. with a paper route when "out of nowhere [she] started crying" and disclosed the abuse. A.S. tried to calm her down and urged her "to tell someone" else about it. But Victim kept saying that she was afraid to report Allgood because she feared that her "family life would be completely disrupted" if she did. A.S. told Victim to report Allgood or she would do it herself.

¶11    A few months later, Victim attempted to run away from home. When Mother was alerted to Victim's preparations, she confronted Victim and asked what she was doing. Victim answered, "'I can't take it anymore . . . I can't take him anymore.'" Confused and thinking that Victim may have been referring to her biological father, Mother asked, "'Who are you arguing with?'" Victim answered, "'[Allgood] is sleeping in my bed . . . [he] is having sex with me.'" After taking a moment to process this news, Mother called the police and reported the abuse.

¶12    While Mother and Victim waited for the police to arrive, Victim showed Mother a text message Allgood had sent earlier that day about how he was excited to be with her and to tuck her in that night.[2] Mother saw that the message came from Allgood's instant messenger account. She took Victim's phone and replied to Allgood's message, asking, "'What do you have planned for our time tonight?'" Allgood answered, "'Well, I've never had to explain myself before.'" At that point the police arrived and the conversation ended.

---

2. The exact language of Allgood's message is unclear from the record. Although the detective assigned to the case took photographs of the message from Victim's phone, he inadvertently deleted them sometime before trial. *See infra* ¶ 15.

*The Trial*

¶13    A number of things occurred at trial that are relevant to this appeal. Before voir dire, the parties and the trial court discussed several issues in chambers. The parties noted that they had agreed not to introduce DNA evidence during trial. In addition, defense counsel[3] agreed not to ask Victim any questions about her sexual activity with Boyfriend so long as the State would not argue Victim became sexually active as a result of Allgood's abuse. Neither party breached either of these agreements.

¶14    Another important subject at trial was the message Allgood sent Victim on the day Victim told Mother that she had been abused. On direct examination, the State asked Victim, "What was he instant messaging you about?" Victim answered, "How he wanted to spend time with me and how he was excited to come tuck me in, and that he wanted to have sex with me." On cross-examination, defense counsel inquired about the message and asked Victim if the detective on the case took a photo of it. Victim responded that he did. The following exchange between defense counsel and Victim ensued:

> Q.    Tell me what that text said again, if you would.
>
> A.    He was excited to come home and spend time with me and tuck me in.
>
> Q.    I heard more yesterday.
>
> A.    That he wanted me.

On redirect, the State asked Victim, "So what did that mean to you when he said he wanted you?" Victim answered, "That he

---

3. Allgood was represented by two attorneys at trial.

wanted to have sex with me." Mother later testified that in her recollection, Allgood's message read, "I can't wait for our time tonight." On cross-examination, Mother testified she could not remember whether Allgood's message read "our time," or "our special time," but she believed the message implied he wanted to be with Victim sexually. She added, "It was not written appropriate for a daddy to write a child. It was something that he should have been writing to me." For this reason, Mother took Victim's phone and responded, asking Allgood what he planned to do with Victim during their time.

¶15    The detective also testified about Allgood's message. He explained that he took photographs of the message, but he inadvertently deleted them from the camera's memory card and was unable to retrieve them. On cross-examination, defense counsel asked the detective if the message included the words "'I want to have sex with you.'" The detective testified he did not remember seeing a text with that specific language. He further testified that if he had seen such language, he would have considered it significant and noted it in his report, but he had made no such note in his report.

¶16    Mother's testimony about the phone call she received from the police officer who pulled over Victim and Allgood is another point of contention on appeal. On direct examination, the prosecutor asked Mother what the officer told her. Without any objection from defense counsel, she answered that the officer told her that he had stopped Victim and Allgood, that he had some concerns about what they were doing, that Victim had told him Allgood was teaching her to drive, and that the situation did not feel right. Mother also testified she had asked the officer to pass the phone to Victim and Victim had told her she was just practicing driving with Allgood.

¶17    The jury convicted Allgood of aggravated sexual abuse of a child, forcible sodomy, two counts of rape, and three counts of forcible sexual abuse. Allgood appeals.

ISSUES AND STANDARDS OF REVIEW

¶18     Allgood raises three unpreserved issues on appeal. First, he contends the State knowingly elicited false testimony at trial. Although Allgood concedes he failed to preserve this issue below, he asserts three separate grounds for appellate review: plain error, ineffective assistance of counsel, and exceptional circumstances. Second, Allgood contends his trial counsel performed ineffectively by agreeing not to question Victim about her sexual relationship with Boyfriend on the condition that the State would not argue she became sexually active as a result of Allgood's abuse. Third, Allgood contends his counsel similarly performed ineffectively by failing to object to the admissibility of alleged hearsay testimony at trial.

¶19     "Appellate courts generally will not consider an issue raised for the first time on appeal absent plain error, exceptional circumstances, or ineffective assistance of counsel." *State v. Burnside*, 2016 UT App 224, ¶ 19, 387 P.3d 570 (citation and internal quotation marks omitted).

¶20     "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (citation and internal quotation marks omitted).

¶21     "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review, and this court must decide whether the defendant was deprived of effective assistance as a matter of law." *State v. Scott*, 2017 UT App 74, ¶ 18. To prevail on a claim of ineffective assistance of counsel, the appellant "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We note that the harmfulness element under the plain

error test "is equivalent" to the prejudice element under the ineffective assistance of counsel test. *Dean*, 2004 UT 63, ¶ 22.

¶22    "The exceptional circumstances concept serves as a safety device, to assure that manifest injustice does not result from the failure to consider an issue on appeal." *State v. Irwin*, 924 P.2d 5, 8 (Utah Ct. App. 1996) (citation and internal quotation marks omitted). "Exceptional circumstances is a doctrine that applies to rare procedural anomalies." *In re adoption of K.A.S.*, 2016 UT 55, ¶ 19, 390 P.3d 278 (citation and internal quotation marks omitted). "We apply this exception sparingly, reserving it for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice." *Id.* (citation and internal quotation marks omitted).

## ANALYSIS

### I. Prosecutorial Misconduct

¶23    Allgood argues the State knowingly elicited false testimony at trial, or failed to correct it, when Victim and Mother described a message Allgood sent Victim. Allgood did not preserve this argument but argues his convictions should be vacated on the following grounds: it was plain error for the trial court to allow the jury to consider the alleged false testimony, defense counsel performed ineffectively by failing to "move the court to correct the problem," and exceptional circumstances justify vacating the convictions.[4]

---

4. The State contends Allgood's argument on this issue is inadequately briefed. While it is a close call and Allgood's brief is lacking in analysis, authority, and organization, we reach the merits of Allgood's claim. Although the deficiencies in the briefing are not so great that we would deem the issue

(continued…)

¶24 Prosecutorial misconduct occurs where "the actions or remarks of the prosecutor call to the attention of the jury a matter it would not be justified in considering," and is reversible error where "the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result." *State v. Basta*, 966 P.2d 260, 268 (Utah Ct. App. 1998) (brackets, citation, and internal quotation marks omitted). "When a prosecutor is aware that testimony is false, he or she has a duty to correct the false impression; failure to do so requires reversal if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *See Mulder v. State*, 2016 UT App 207, ¶ 28, 385 P.3d 708 (brackets, citation, and internal quotation marks omitted). But inconsistencies in a witness's testimony alone do not prove the testimony was false much less support the assertion that the prosecutor knowingly relied on false testimony. *See Gallegos v. Turner*, 409 P.2d 386, 387 (Utah 1965).

¶25 To prevail on his claims of plain error, ineffective assistance of counsel, and exceptional circumstances, Allgood must first show the testimony was in fact false, *see Mulder*, 2016 UT App 207, ¶¶ 28–29 (stating there is no prosecutorial misconduct under a claim of false testimony where the defendant has not shown the testimony to be false), as these claims rest on this contention. We conclude Allgood has failed to

---

(…continued)
inadequately briefed, they do inhibit Allgood's ability to carry his burden of persuasion. *See State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226 ("[L]ike the marshaling requirement imposed by rule 24(a)(9) of the Rules of Appellate Procedure, our adequate briefing requirement is not a 'hard-and-fast default notion.' Instead, it is a 'natural extension of an appellant's burden of persuasion.'" (quoting *State v. Nielsen*, 2014 UT 10, ¶¶ 40–41, 326 P.3d 645)).

establish that Victim's testimony was false, and the jury therefore properly considered it.

¶26   The crux of this issue lies in Victim's response to the following question posed by the prosecutor on direct examination: "What was [Allgood] instant messaging you about?" Victim responded, "How he wanted to spend time with me and how he was excited to come tuck me in, and that he wanted to have sex with me." Allgood claims the portion of Victim's response, "he wanted to have sex with me," amounted to false testimony given the differing statements from various witnesses about the message as well as the detective's testimony that he did not recall the text explicitly stating that Allgood wanted to have sex with Victim.

¶27   Allgood's claim is resolved when looking to the language of the prosecutor's and defense counsel's initial questions to Victim about Allgood's message. The prosecutor asked, "What was he instant messaging you *about*?" (Emphasis added). The prosecutor did not ask Victim what the text of the message read; rather, she asked about its subject. From Victim's point of view, Allgood saying he could not wait to tuck her into bed could have been code for saying he wanted to have sex with her, especially considering that Allgood's abuse was masked under the guise of tucking her into bed. Victim did not testify about the words used in the message but instead described its subject.

¶28 Because the detective inadvertently deleted the photograph he took of the message, the only people who read Allgood's message were Victim, Mother, Allgood, and the detective. Accordingly, the only evidence of the message came from each of their recollections. Moreover, Victim's testimony was but one person's recollection of the deleted message, and each of the witnesses differed slightly in their recollection of its content. There is no way to know whose version was correct, and without knowing what the message said, there could be no false impression for the State to correct. *See Mulder*, 2016 UT App 207, ¶ 28 (explaining that only where a prosecutor "is aware that

testimony is false, he or she has a duty to correct the false impression" (citation and internal quotation marks omitted)). We conclude it was not improper to allow the jury to consider Victim's and Mother's testimony about Allgood's message. *See Basta*, 966 P.2d at 268. Accordingly, Allgood's claims of plain error, ineffective assistance of counsel, and exceptional circumstances fail.

## II. Ineffective Assistance of Counsel

¶29    Allgood further contends his convictions should be vacated on the basis of two additional alleged instances of ineffective assistance of counsel. First, he argues defense counsel performed ineffectively by agreeing not to question Victim about her sexual relationship with Boyfriend on the condition that the State would not argue Victim became sexually active as a result of Allgood's abuse. Second, he argues defense counsel performed ineffectively by failing to object to alleged hearsay testimony made by Mother.

¶30    To prevail on these claims, Allgood has the heavy burden of satisfying both elements of the *Strickland* test; that is, he "must show that counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Tyler*, 850 P.2d 1250, 1254, 1259 (Utah 1993) ("[A] defendant claiming ineffective assistance of counsel has the difficult burden of showing *actual unreasonable representation and actual prejudice*."). To satisfy the first element of the test, Allgood "must overcome the strong presumption that his trial counsel rendered adequate assistance, by persuading the court that there was *no conceivable tactical basis* for counsel's actions." *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (brackets, citations, and internal quotation marks omitted). "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694).

A.     Counsel's Agreement with the State

¶31     According to Allgood, defense counsel's agreement not to question Victim about her sexual relationship with Boyfriend prevented him from presenting "a complete defense and . . . effectively cross-examin[ing] the State's witnesses," because he could not counter the State's theme that he was jealous of Boyfriend's relationship with Victim. Allgood argues, "[w]ithout that freedom, the only cogent and relevant rebuttal to the State's depiction of [Allgood] was unavailable"—namely, that his apparent jealousy was in fact merely a stepfather's normal anxiety over a sexually active teenager.

¶32     Allgood has failed to persuade us that "no conceivable tactical basis" existed for counsel to agree not to question Victim about her sexual relationship with Boyfriend in exchange for the State's promise not to argue Victim became sexually active as a result of Allgood's abuse. *See Clark*, 2004 UT 25, ¶ 7 (internal quotation marks omitted). As the State correctly points out, defense counsel could have reasonably decided not to delve into Boyfriend's sexual relationship with Victim because it might have explained Allgood's jealousy, thus strengthening the State's case. And of course, under counsel's deal, the prosecutor agreed not to argue that Allgood bore responsibility for Victim's having become sexually active. Rather than attempting to demonstrate how this strategy would have been unreasonable, Allgood merely showcases the trial strategy he believes, in hindsight, would have been more effective. Accordingly, he has not demonstrated that his counsel performed deficiently.

¶33     Allgood has also failed to establish prejudice. Allgood's brief is filled with conclusory statements such as, Victim's "sexual relationship with her boyfriend provides a key piece of the puzzle," Allgood was unable to "present a complete defense," and "it is chutzpah to claim that [Allgood] is forbidden to explore the exact nature" of Boyfriend's relationship with Victim. Not only are these statements incorrect, but Allgood does not develop these bald assertions. The State's "jealousy"

theme did not play a major role in the trial; out of hundreds of pages of trial testimony, the jealousy theme only surfaces in a few lines, and neither Victim nor Boyfriend testified that Allgood was jealous. Moreover, counsel's agreement did not prevent Allgood from rebutting testimony that he was jealous. In fact, Allgood testified he was merely acting as any parent would have. Allgood also does not attempt to explain how any purported benefit of inquiring about Boyfriend's sexual relationship with Victim could have outweighed the evidence that Allgood abused her. Because Allgood has failed to show both that defense counsel performed deficiently and that he was prejudiced as a result, we conclude defense counsel were not ineffective for agreeing not to question Victim about her sexual relationship with Boyfriend.

### B. Failure to Object to Alleged Hearsay

¶34 Allgood argues his counsel performed ineffectively by failing to object to Mother's testimony about what the police officer told her on the phone after he stopped Victim while she was practicing driving with Allgood. Mother testified the officer told her that he had some concerns about what Victim and Allgood were doing, that he observed them in a "compromising position," and that the situation did not feel right. During this portion of Mother's testimony, she also stated that when she spoke directly with Victim, Victim told her she was just practicing driving.

¶35 In his opening brief, after arguing that Mother's testimony was harmful, Allgood muses, "After such a damaging exchange, one would hope that there was some strategic reason for letting [Mother] unload as she did. Why else sit by silently . . . ? Alas, it was no stratagem, just negligence." Allgood then concludes, "There is no possible strategic reason to allow the State to reinforce the allegations of its complaining witnesses through the hearsay statements of some unknown, unconfronted police officer." Allgood's conclusory argument falls well short of demonstrating that defense counsel had "no conceivable tactical

basis" for failing to object to Mother's testimony. *See Clark*, 2004 UT 25, ¶ 7 (internal quotation marks omitted). Allgood must show—not merely assert—there was no conceivable tactical basis for counsel's actions. *See id.*

¶36    In any event, counsel's actions had a conceivable tactical basis. Although Mother's testimony was harmful to Allgood, defense counsel may have thought it best not to object because had they objected, the State very well could have called the officer to testify. Defense counsel might have preferred Mother to be the one to testify to the events rather than the officer who observed them firsthand, because the officer could have added more factual detail concerning his sense that the situation did not feel right and the basis for his observation that Allgood and Victim were in a "compromising situation."

¶37    Allgood also does not show how the outcome of the trial would have been different had defense counsel objected to Mother's testimony. In his opening brief, Allgood addresses prejudice as to all his claims in a single catch-all section. Without addressing the inculpatory evidence presented at trial, he highlights testimony he believes supported acquittal on all charges. He then concludes, without reasoned analysis, that because "the State's evidence was so weak, there is much more than a reasonable probability that, but for the errors, there would have been a different result." "This is merely rephrasing that which must ultimately be shown to satisfy the second prong of the *Strickland* test but is clearly insufficient to affirmatively demonstrate a reasonable probability that the trial result would have been different if counsel had not performed deficiently." *See Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993).

¶38    In his reply brief, Allgood contends that where the evidence in a case is weak, "analyzing the question of prejudice is not a complicated endeavor." He then attempts to justify the conclusory statements in his opening brief by noting that Utah appellate courts have, on several occasions, held that a defendant was prejudiced by counsel's deficient performance

after analyzing the question in only two, three, or four paragraphs. Although Allgood briefly summarizes these cases, he fails to demonstrate how his case is analogous to them, and in any event, the number of paragraphs a court uses to analyze a question is not the benchmark. Allgood has failed to demonstrate prejudice.

¶39   In sum, Allgood's counsel did not provide ineffective assistance of counsel by agreeing not to question Victim about her sexual relationship with Boyfriend or by failing to object to Mother's testimony.

## CONCLUSION

¶40   We conclude Allgood's convictions do not rest on false testimony and he did not receive ineffective assistance of counsel. We therefore affirm.

_____