**2018 UT App 93**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
FERNANDO ANTONIO GUZMAN,
Appellant.

Opinion
No. 20150925-CA
Filed May 24, 2018

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 141911297

Hakeem Ishola and Carlos Navarro, Attorneys
for Appellant

Sean D. Reyes, Jennifer Paisner Williams, and Erin
Riley, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and JILL M. POHLMAN
concurred.

CHRISTIANSEN, Judge:

¶1 Defendant Fernando Antonio Guzman appeals his conviction on one count of rape, a first degree felony. *See* Utah Code Ann. § 76-5-402 (LexisNexis 2017).[1] Defendant contends that the trial court erred in excluding evidence under rule 412 of the Utah Rules of Evidence, that the trial court erroneously admitted hearsay evidence and violated his constitutional right

---

1. Because recent amendments to section 76-5-402 do not impact our analysis, we cite the current version of the Utah Code for convenience.

to confrontation, and that the State failed to produce sufficient evidence at trial to support his conviction. We affirm.

BACKGROUND[2]

¶2    In November 2011, Victim, who was then fifteen years old, was a patient at a healthcare facility. Victim fled the facility on foot and wound up on the freeway, where Defendant picked her up. Defendant took Victim to the apartment he shared with his mother. That night, Defendant had nonconsensual sexual intercourse with Victim.

¶3    The next day, Defendant drove Victim back to the healthcare facility, and Victim reported the incident to the facility's staff. Victim was then taken to Primary Children's Hospital, where a nurse performed a sexual assault examination. The nurse introduced herself to Victim "as a nurse working with Safe and Healthy Families" and stated that she "would be asking [Victim] questions about why she was there and about her health history and then [the nurse] would also want to do a physical exam." When the nurse asked Victim why she was there, Victim "said she had been raped four times." The nurse also asked Victim if she was having any pain or had any injuries, and Victim stated that "she had a sore throat and that she had bruises on her neck, her stomach and her leg." The nurse treated Victim with an emergency contraceptive and with antibiotics for possible exposure to sexually transmitted infections that might result from "penile penetration." "[B]ased upon the information [she] got from [Victim] about ejaculation," the nurse took swabs

---

2. "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Loose*, 2000 UT 11, ¶ 2, 994 P.2d 1237. "We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346.

from Victim's stomach, vaginal cavity and surrounding areas, and anus, and assembled a sexual assault kit.

¶4      A detective interviewed both Defendant and Victim. During his interview with Defendant, the detective explained to Defendant that Victim alleged he had raped her. Defendant denied having any sexual contact whatsoever with Victim. The detective collected a sample of Defendant's DNA via buccal swab—"a method of collecting DNA by swabbing the interior surface of a person's cheek." *See State v. White*, 2016 UT App 241, ¶ 4, 391 P.3d 311. The detective took the swab and Victim's sexual assault kit to the state crime lab for processing.

¶5      A forensic biologist tested Victim's swabs for seminal fluid and was able to "identif[y] sperm on . . . the vaginal swabs, anal swabs and stomach swabs." A DNA expert determined that Defendant's DNA matched the DNA found on Victim's swabs. The DNA expert later testified that the chances of an unrelated individual, randomly drawn from the population, matching the DNA profile "turns out to be in Caucasians 1 in 44 sextillion, in blacks it would be 1 in 350 sextillion, and in southwestern Hispanics it would be one in 340 quintillion."[3]

¶6      The State initially charged Defendant with four counts of rape and one count of object rape, all first degree felonies, but later dropped one of the rape counts. At the preliminary hearing, Victim testified that she "had lied when she claimed there had been any sexual conduct between her and Defendant."[4] Based on

---

3. A quintillion is 1 followed by 18 zeros ($10^{18}$) and a sextillion is 1 followed by 21 zeros ($10^{21}$).

4. Both parties acknowledge that, during the preliminary hearing, the trial court's tape recording device stopped working. The parties later stipulated to the facts regarding Victim's preliminary hearing testimony.

Victim's preliminary hearing recantation, Defendant filed a motion pursuant to rule 412 of the Utah Rules of Evidence, seeking to admit evidence that Victim was truthful in saying she had "not [been] raped this time because she had truthfully reported other rape incident[s] in the past." The trial court denied Defendant's motion.

¶7     During the pretrial conference, the prosecutor indicated that he had not been able to locate Victim, and the court continued the trial date to allow the State to subpoena additional witnesses. At the beginning of trial, when Victim failed to appear, the State informed the court that it intended to "offer[] [Victim's] explanation as to what happened to her through Rule of Evidence 803(4), statements made for medical diagnosis or treatment." Specifically, the State asserted that it intended to call the nurse to testify about Victim's statements during the medical examination that she had been raped multiple times. Defense counsel objected, arguing that Victim did not make the statements to the nurse for the purpose of medical diagnosis or treatment and that his only opportunity to cross-examine Victim had been at the preliminary hearing. Defense counsel also indicated that he would not seek to admit Victim's preliminary hearing testimony. The trial court ruled that

> to the extent the statements made by [Victim] to medical providers were provided for the purpose of diagnosis or treatment, and those statements were related to medical diagnosis or treatment, then those statements carry the guarantee of trustworthiness and [are] entitled to this exception, and so . . . to the extent that testimony fits into that criteria, those statements will be allowed.

¶8     Before closing arguments, defense counsel moved for a directed verdict on counts two through four (two counts of rape and one count of object rape). The trial court dismissed the object rape count but denied Defendant's motion on the two counts of

rape. The jury convicted Defendant on one count of rape. Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶9 Defendant makes several arguments on appeal. First, he contends that his "rights to cross-examination and to present a complete defense [were] abridged when the [trial] court denied his Rule 412 motion seeking admission of rebuttal evidence to show that [Victim] knew how to report a true rape to the authorities." "We review the trial court's underlying evidentiary determinations for abuse of discretion." *State v. Clark*, 2009 UT App 252, ¶ 10, 219 P.3d 631. However, the alleged "denial of the right to confront and cross-examine witnesses presents a question of law which is reviewed for correctness." *Id.* (quotation simplified).

¶10 Second, Defendant contends that he "was denied the right of confrontation when [Victim] voluntarily abstained from trial, and third party witnesses testified that [Victim] told them out-of-court that [Defendant] raped her, contrary to what she said at [the] preliminary hearing." As part of this argument, Defendant contends that the trial court's admission of Victim's hearsay statements under rule 803(4) of the Utah Rules of Evidence "was problematic." When reviewing rulings on hearsay evidence, we review legal questions regarding admissibility for correctness, questions of fact for clear error, and the trial court's final ruling on admissibility for abuse of discretion. *State v. Rhinehart*, 2006 UT App 517, ¶ 10, 153 P.3d 830. "Whether a defendant's confrontation rights have been violated is a question of law, reviewed for correctness." *State v. Garrido*, 2013 UT App 245, ¶ 9, 314 P.3d 1014.

¶11 Third, Defendant contends that "[t]he evidence presented by the State was insufficient to convict [him] of rape." Defendant concedes that this argument was not preserved in the trial court

and seeks review under the ineffective-assistance-of-counsel and plain-error exceptions to the preservation requirement. *See State v. Allgood*, 2017 UT App 92, ¶ 19, 400 P.3d 1088 ("Appellate courts generally will not consider an issue raised for the first time on appeal absent plain error, exceptional circumstances, or ineffective assistance of counsel." (quotation simplified)). "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. A "trial court plainly errs if it submits the case to the jury and thus fails to discharge a defendant when the insufficiency of the evidence is apparent to the court." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346. "[T]o establish plain error, a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *Id.* When a defendant challenges the sufficiency of the evidence, we review "the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict." *Id.* ¶ 18.

¶12 Fourth, Defendant contends that "[c]umulative error warrants reversal of [his] conviction and a new trial ordered." "Under the cumulative error doctrine, we apply the standard of review applicable to each underlying claim or error and reverse only if the cumulative effect of multiple errors undermines our confidence that a fair trial was had." *State v. Yalowski*, 2017 UT App 177, ¶ 16, 404 P.3d 53 (quotation simplified).

## ANALYSIS

### I. Utah Rule of Evidence 412

¶13 Defendant contends that "[t]he court denied [him] the right to present a complete defense by not allowing him to present evidence of [Victim's] prior rape incidents to rebut the State's theory and show that [Victim] knew how to report a true

rape." According to Defendant, admission of Victim's prior rape accusations would have illustrated that Victim "had truthfully reported other rape incidents in the past" and that she "was thus truthful when she said [at the preliminary hearing that] she was not raped this time."

¶14 In a criminal proceeding involving alleged sexual misconduct, rule 412 of the Utah Rules of Evidence prohibits admission of "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition." Utah R. Evid. 412(a). Defendant concedes that "the evidence [he] sought to introduce is generally barred under Rule 412," but he asserts that "evidence of [Victim's] other rape incidents/cases should have been admitted under the exception allowing admission if excluding such would infringe the right to effective cross-examination." *See id.* R. 412(b)(3) ("The court may admit the following evidence if the evidence is otherwise admissible under these rules: . . . (3) evidence whose exclusion would violate the defendant's constitutional rights.").

¶15 The trial court determined that

> [e]vidence of [Victim's] prior victimization and her knowledge of how to report a rape is simply not relevant . . . as to whether the Defendant raped her under the facts of this matter. . . . The evidence of [Victim's] prior sexual activity and/or victimization simply does not make it less probable or more probable that [Defendant] raped or had sexual intercourse with her in the instant matter.

The court further determined that under rule 403 of the Utah Rules of Evidence, "the probative value of [Victim's] prior sexual conduct and reporting of sexual assault is substantially outweighed by the danger of unfair prejudice to [Victim] and the state, and has a great tendency to confuse and mislead the jury."

¶16 According to Defendant, he "anticipated rebutting the State at trial with evidence showing that [Victim] truthfully reported her other rape incidents to the authorities, and thus was not lying at the preliminary hearing when she said [Defendant] did not rape her." "Conversely, should [Victim] revert at trial to her out-of-court story, [Defendant] would not have needed the evidence to be able to mount a complete defense because he could have impeached [Victim] with her preliminary hearing testimony and further damaged her already weakened credibility."

¶17 The State correctly observes that Victim's preliminary hearing testimony—that she "had lied when she claimed there had been any sexual conduct between her and Defendant"—did not come in at trial. Thus, according to the State, "any error in omitting the evidence of [Victim's] prior rape accusations under Rule 412 was harmless because the jury never heard [Victim's] preliminary hearing recantation." *See generally State v. Clark*, 2016 UT App 120, ¶ 8, 376 P.3d 1089 (observing that where an appellant establishes a constitutional violation on appeal, the State has the burden of demonstrating that the error was harmless beyond a reasonable doubt). We agree.

¶18 At the beginning of trial, the State asserted that it planned to introduce evidence of Victim's medical examination and her statements to the nurse. The State also noted that it understood that the defense planned to offer the statement Victim made at the preliminary hearing that "there was no sexual contact at all." The State informed the court that it would not object to the admission of Victim's preliminary hearing statement. The State further asserted, however, that "once that evidence is in, Rule 806 of the Utah Rules of Evidence allows us to ask the officer who interviewed [Victim] at the time for additional details, that being a prior inconsistent statement with the statement made at the preliminary hearing. That occurred prior to any motivation to fabricate, thus meeting the Rule 806 exception."

¶19 Defense counsel responded by discussing the admissibility of Victim's medical examination and her statements to the nurse, and he stated that "we'd be more than happy to not mention what happened at the preliminary hearing in order to prevent these random statements [from] being brought in that we have no chance to challenge." The trial court clarified, "So you do not anticipate utilizing the preliminary hearing for your purposes . . . ." Defense counsel replied, "No, I think we can skip over that." The court stated, "And if that changes we can probably further address that later." Despite the fact that Victim's statements to the nurse were later introduced into evidence, defense counsel did not seek to introduce Victim's preliminary hearing testimony.

¶20 Even if we assume, without deciding, that the exclusion of the evidence of Victim's prior rape accusations violated Defendant's constitutional rights, we conclude that the exclusion of that evidence was harmless beyond a reasonable doubt. As mentioned, *supra* ¶ 16, Defendant's trial strategy was to use Victim's prior rape accusations, in conjunction with her preliminary hearing testimony recantation, to demonstrate that Victim "truthfully reported her other rape incidents to the authorities, and thus was not lying at the preliminary hearing when she said [Defendant] did not rape her." However, given that defense counsel did not seek to admit Victim's preliminary hearing testimony after all, there was no need for defense counsel to use the evidence of Victim's prior rape accusations to bolster her credibility and demonstrate that she was telling the truth at the preliminary hearing; the jury simply never heard Victim's preliminary hearing recantation. Moreover, we agree with the State that the trial court's exclusion of the rule 412 evidence did not prevent Defendant from seeking to admit her preliminary hearing rape recantation. Indeed, even without the rule 412 evidence, the evidence of Victim's preliminary hearing recantation might well have been helpful to Defendant's case, although defense counsel had to consider whether the benefit of the recantation would be outweighed by the detective's being

then able to recount Victim's detailed account of the rapes the day following the incident.[5]

¶21 In sum, we conclude that any error in omitting the evidence of Victim's prior rape accusations was harmless beyond a reasonable doubt.

## II. Hearsay and the Right to Confrontation

¶22 Defendant contends that he "was denied the right of confrontation when [Victim] voluntarily abstained from trial, and third party witnesses testified that [Victim] told them out-of-court that [Defendant] raped her, contrary to what she said at [the] preliminary hearing." Specifically, Defendant takes issue with the nurse's and the detective's testimonies. We address the nurse's testimony first.

### A.     The Nurse's Testimony

¶23 At the beginning of trial, the State observed that Victim "has chosen not to attend this event" and indicated that it was "anticipating offering her explanation as to what happened to her through Rule of Evidence 803(4)." The State further indicated that it was planning to ask the nurse "what statements were made by [Victim] for purposes of the nurse doing the examination." Defense counsel argued that Victim's "statements regarding the [incident] would be inadmissible pursuant to *Crawford*." *See generally Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue, . . . the Sixth Amendment['s Confrontation Clause] demands what the common law required: unavailability and a prior opportunity for cross-examination."). Defense counsel clarified that he did not

---

5. Defendant does not argue on appeal that defense counsel was ineffective for not seeking to introduce Victim's preliminary hearing testimony.

believe "*Crawford* would exclude discussion of [Victim's] examination, [but] simply the statements she made regarding what happened." Defense counsel asserted that "any statements that [Victim] made regarding what happened should be excluded from this proceeding."

¶24 After a short recess, the trial court ruled:

> With regard to the proposed testimony from the nurse, to the extent the statements made by [Victim] to medical providers were provided for the purpose of diagnosis or treatment, and those statements were related to medical diagnosis or treatment, then those statements carry the guarantee of trustworthiness and [are] entitled to this exception, and so . . . to the extent that testimony fits into that criteria, those statements will be allowed.

¶25 During her testimony, the nurse stated, "I asked why [Victim] was there, and she had told me that she had been raped, and . . . she said she had been raped four times." Defense counsel objected and stated, "I believe that this is testimony not related to the medical condition." The trial court declined to exclude the nurse's testimony.[6]

¶26 Defendant first asserts that admitting Victim's "hearsay statements" under rule 803(4) of the Utah Rules of Evidence "was problematic." He then asserts that "[a]dmitting [Victim's] testimonial hearsay through Nurse was even more problematic

---

6. Following defense counsel's objection, the trial court held a bench conference. That discussion does not appear in the trial transcript, but the trial court apparently overruled defense counsel's objection and therefore allowed the State to proceed with its questioning of the nurse.

under the Confrontation Clause." We first address Defendant's hearsay argument.

¶27 "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c). Hearsay is not admissible except as provided by law or the Utah Rules of Evidence. *See id.* R. 802.

¶28 Rule 803(4) of the Utah Rules of Evidence allows for the admission of hearsay statements that are "made for—and [are] reasonably pertinent to—medical diagnosis or treatment" and "describe[] medical history; past or present symptoms or sensations; their inception; or their general cause." "If the statement meets both [of rule 803(4)'s] qualifications, it is admissible because of the 'patient's strong motivation to be truthful' when discussing his or her medical condition with a doctor."[7] *Hansen v. Heath*, 852 P.2d 977, 979 (Utah 1993) (quoting Fed. R. Evid. 803(4) advisory committee note), *superseded by statute on other grounds as recognized in Lancer Ins. Co. v. Lake Shore Motor Coach Lines, Inc.*, 2017 UT 8, 391 P.3d 218. "Such statements carry a 'guarantee of trustworthiness' entitling them to an exception from the mandates of the hearsay rule." *Id.* (quoting Fed. R. Evid. 803(4) advisory committee note).

¶29 We acknowledge that Victim's statement to the nurse that she had been raped four times constitutes hearsay, in that the out-of-court statement was introduced at Defendant's trial to

---

7. "Statements made for purposes of medical diagnosis and treatment 'need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included.'" *Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 17 n.2, 176 P.3d 446 (quoting Fed. R. Evid. 803(4) advisory committee note).

prove the truth of the matter asserted, i.e., that Victim had been raped. *See* Utah R. Evid. 801(c). Nevertheless, we conclude that the evidence was admissible under rule 803(4).

¶30    The record demonstrates that Victim's statements to the nurse were made for the purpose of medical diagnosis or treatment. The nurse testified that she introduced herself to Victim "as a nurse working with Safe and Healthy Families" and that she told Victim that she "would be asking her questions about why [Victim] was there and about [Victim's] health history and then [she] would also want to do a physical exam." The nurse stated that Victim appeared to understand how the nurse was going to "treat her or examine her." The nurse stated that asking Victim "why she's there" was important for the physical exam and knowing "what parts of the body we want to examine. And then also if they are complaining of a rape or sexual assault, we would definitely want to examine closely the genitals."

¶31    The nurse testified that Victim reported that "she had been raped four times." The nurse then asked Victim "if she was having any pain or if she had any injuries or if she was bleeding," and Victim stated that she "had a sore throat and that she had bruises on her neck, her stomach and her leg." Victim also stated that "she had been touched on different parts of her body" and that "her arms were held down and that she was choked." The nurse stated that the information from Victim helped her know "where to look when [she] did the physical examination": "We'd want to make sure and examine her neck closely for any trauma there and then also assess her arms to see if there was anything, . . . bruises, any injuries to the bones or anything like that." The nurse further testified that, "because there was ejaculation into the vagina," she gave Victim an emergency contraceptive. In addition, upon "seeing [a] history of penile penetration," the nurse gave Victim antibiotics "to treat for possible exposure to Chlamydia and Gonorrhea." The nurse took swabs from Victim's stomach, vaginal cavity and

surrounding areas, and anus based on Victim's report regarding ejaculation.

¶32 Based on the foregoing, we conclude that the trial court properly exercised its discretion when it admitted Victim's statements to the nurse under rule 803(4). Victim's statements suggest they were made for purposes of medical treatment or diagnosis, and the statements allowed the nurse to address the possibility of injuries, pregnancy, and sexually transmitted diseases.

¶33 Defendant also asserts that his Sixth Amendment right to confront witnesses was violated by the nurse's testimony. The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *see also* Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have the right . . . to be confronted by the witnesses against him[.]"). In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court explained that the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" *Id.* at 51. The Court held that testimonial statements by witnesses absent from trial are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59; *id.* at 68 ("Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."). "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011) (alterations in original) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)); *see also Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015) ("In the end, the question is whether, in light of all the circumstances, viewed objectively, the primary

purpose of the conversation was to create an out-of-court substitute for trial testimony." (quotation simplified)).

¶34    Defendant asserts, in a single sentence, that Victim's "out-of-court statements were 'testimonial' because [Victim] was driven to the hospital by non-medical practitioners after reporting being raped."[8] But Defendant offers no analysis or case law supporting this claim; he fails to explain how the identity of the person who transported Victim to the hospital for the exam relates to the primary purpose of Victim's statements to the nurse at the hospital. By neglecting to do so, Defendant has failed to carry his burden of demonstrating that Victim's out-of-court statements were testimonial and that his confrontation rights were violated.[9]

¶35    Defendant further asserts that the medical diagnosis and treatment exception "generally does not permit admitting hearsay where the victim names the perpetrator while seeking medical treatment." Defendant asserts that Victim "identified [Defendant] to [the nurse] as the perpetrator when his identity was not critical to medical history, diagnosis, or treatment." In support of this argument, Defendant cites the following exchange between the prosecutor and the nurse at trial:

---

8. The identity of the "non-medical practitioners" is unclear.

9. Defendant also contends that "neither of the parties' counsel nor the court contemplated instructing the jury to disregard Nurse's testimony, which exceeded the scope of medical diagnosis, or attempt[ed] to alleviate its impact for Confrontation Clause purposes." According to Defendant, "[his] counsel was either ineffective or it was plain error for the court to not caution the jury." Given our resolution of Defendant's rule 803(4) and Confrontation Clause arguments, we have no occasion to address this argument further.

> Q    [A]fter you got that general history of her current condition, . . . [d]id she talk about any other touching by the defendant?
>
> A    She did say that she had been touched on different parts of her body. She said her arms were held down and that she was choked.

Defendant asserts, in a footnote, that "[t]o the extent counsel failed to object, then this Court should review for plain error as it should have been obvious to the court that such testimony exceed[ed] the scope of medical diagnosis and was inconsistent with *Crawford*."

¶36    "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful . . . ." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (quotation simplified). "To establish that the error should have been obvious to the trial court, [a defendant] must show that the law governing the error was clear at the time the alleged error was made." *Id.* ¶ 16. Consequently, "an error is not obvious if there is no settled appellate law to guide the trial court." *State v. Vu*, 2017 UT App 179, ¶ 13, 405 P.3d 879 (quotation simplified).

¶37    We first note that there is no testimony from the nurse explicitly stating that Victim reported that *Defendant* was her assailant. To the extent that the nurse's answer to the prosecutor's question can be read as an implicit acknowledgement that Victim had reported that Defendant held down and choked Victim, Defendant has failed to demonstrate that the alleged error should have been obvious to the trial court.

¶38    Defendant has not cited, and we are not aware of, any Utah law holding that a patient's identification of the person who injured him or her exceeds the scope of medical treatment and diagnosis. Moreover, the law in this area does not appear to

be plainly settled by outside state or federal case law. *See, e.g.*, *United States v. Gabe*, 237 F.3d 954, 958 (8th Cir. 2001) ("In cases of sex abuse, the identity of the abuser may be relevant to treating the victim's emotional and psychological injuries. For this reason, we have upheld the admission of hearsay statements identifying the abuser to a physician where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." (quotation simplified)); *Clark v. State*, 199 P.3d 1203, 1205, 1213 (Alaska Ct. App. 2009) (observing that "the medical diagnosis and treatment hearsay exception does not normally encompass a patient's identification of the person who hurt them or a patient's attributions of fault," but concluding that the victim's statements were nontestimonial for Confrontation Clause purposes where the "circumstances objectively establish that [the victim] and the emergency room personnel shared the primary purpose of obtaining/providing proper medical care for [the victim]"); *People v. Cage*, 155 P.3d 205, 218 (Cal. 2007) (concluding, where a doctor asked the patient "what happened" and the patient identified his assailant, that the patient's testimony was nontestimonial because the doctor's question was "neutral in form"; the doctor "did not pursue that avenue further"; and "[o]bjectively viewed, the primary purpose of the question, and the answer, was not to establish or prove past facts for possible criminal use, but to help [the doctor] deal with the immediate medical situation").

¶39 Additionally, a trial court is "not required to constantly survey or second-guess a nonobjecting party's best interests or trial strategy and is not expected to intervene in the proceedings unless the evidence would serve no conceivable strategic purpose." *State v. Bedell*, 2014 UT 1, ¶ 26, 322 P.3d 697 (quotation simplified). "Further, the court should take measures to avoid interfering with potential legal strategy or creating an impression of a lack of neutrality." *Id.* Consequently, "plain error does not exist when a conceivable strategic purpose exists to support the use of the evidence." *Id.* (quotation simplified). Here,

the trial court could reasonably have determined that defense counsel strategically chose not to object to this portion of the nurse's testimony in order to highlight during closing argument that the nurse never actually testified that Victim had reported to her that Defendant was her assailant. Consequently, we cannot conclude that any error in admitting an implicit identification of Defendant should have been obvious to the trial court.

¶40    In sum, we conclude that Victim's statements to the nurse were admissible under rule 803(4) as statements made for purposes of medical diagnosis or treatment. *See* Utah R. Evid. 803(4). In addition, Defendant has failed to demonstrate that his Sixth Amendment right to confrontation was violated.

B.    The Detective's Testimony

¶41    Defendant also contends that admitting the detective's testimony was a "more egregious[]" violation of his right to confrontation than admitting the nurse's testimony because the detective's testimony relayed Victim's accusation that Defendant had raped her.

¶42    Defendant observes that at trial, the prosecutor asked the detective, "Did you explain to [Defendant] why you wanted to talk to him?" The detective replied, "I did. I explained that there [were] allegations made by [Victim] claiming that she alleged that [he] had raped her." According to Defendant, the detective's "testimony that [Victim] claimed [Defendant] raped her" was "simply a roundabout way of making it known to the jury that [Victim] had accused [Defendant] of rape, and that [the detective] believed [Victim] was truthful." Defendant acknowledges that defense counsel did not object to the detective's testimony and that "this error was unpreserved." Defendant asserts that "the plain error, exceptional circumstances and [ineffective assistance of counsel] rules apply."

¶43 The Utah Supreme Court has held that "unpreserved federal constitutional claims are not subject to a heightened review standard but are to be reviewed under our plain error doctrine." *State v. Bond*, 2015 UT 88, ¶ 44, 361 P.3d 104. Again, to establish plain error, Defendant "must demonstrate (1) that there was an error, (2) that it should have been obvious to the trial court, and (3) that it was harmful." *Id.* ¶ 48. "An error is harmful if, absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, if our confidence in the verdict is undermined." *Id.* ¶ 49 (quotation simplified). Like preserved claims of non-constitutional error, Defendant bears the burden of demonstrating prejudice. *See State v. Clark*, 2016 UT App 120, ¶ 9, 376 P.3d 1089.

¶44 As previously discussed, "where testimonial evidence is at issue," "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). However, in *Crawford*, the Supreme Court explained that the Confrontation Clause is not violated when testimonial statements are admitted for purposes other than establishing the truth of the matter asserted. *See id.* at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see also, e.g., Williams v. Illinois*, 567 U.S. 50, 70 (2012) (plurality opinion) ("*Crawford*, while departing from prior Confrontation Clause precedent in other respects, took pains to reaffirm the proposition that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (quotation simplified)); *People v. Cage*, 155 P.3d 205, 211 n.6 (Cal. 2007) ("*Crawford* made clear that there are no confrontation clause restrictions on the introduction of out-of-court statements for *nonhearsay* purposes.").

¶45 Here, even assuming that Victim's statement to the detective was testimonial, its admission did not violate Defendant's right to confrontation, because the statement was not offered at trial to prove the truth of the matter asserted. *See*

*Crawford*, 541 U.S. at 59 n.9; *see also Street*, 471 U.S. at 413–14 (concluding, where the prosecutor did not introduce an accomplice's out-of-court confession to prove the truth of the accomplice's assertions, that the confession was not hearsay and that the "nonhearsay aspect of [the accomplice's] confession . . . raise[d] no Confrontation Clause concerns"); Utah R. Evid. 801(c). Rather, the context of the detective's testimony indicates that his recitation of Victim's accusation against Defendant was offered not to establish that Defendant had raped Victim, but to explain the reason for the interview. Specifically, the detective needed to speak with Defendant regarding an allegation of rape. Accordingly, there was no Confrontation Clause violation, and thus, no error.

¶46    Nevertheless, Defendant asserts that, "but for [the detective's] testimony, which corroborates [the nurse's testimony] on [the single rape conviction] alone, the jury would have acquitted [him] of Count 1 as it did with Counts 2 & 3." We are not persuaded. Even without the detective's testimony, the DNA evidence was sufficient for a reasonable jury to find that Defendant and Victim had sexual intercourse at least once, and the jury could have reasonably believed the nurse's testimony that Victim reported that she had been raped. *Infra* ¶ 53. We conclude that the detective's testimony did not violate Defendant's right to confrontation and that Defendant cannot demonstrate that the trial court plainly erred in this regard. *See Bond*, 2015 UT 88, ¶ 48.

¶47    Defendant also asserts that defense counsel was ineffective for not objecting to the detective's testimony regarding Victim's statements. To demonstrate ineffective assistance of counsel, a defendant must show that defense counsel's performance was deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the detective's testimony did not violate Defendant's confrontation rights, any objection on Confrontation Clause grounds would have been futile. *State v.*

*Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52 ("The failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (quotation simplified)). Accordingly, defense counsel's failure to object did not constitute ineffective assistance.[10]

## III. Sufficiency of the Evidence

¶48 Defendant contends that the State's evidence was insufficient to convict him of rape. Defendant concedes that his challenge to the sufficiency of the evidence is unpreserved,[11] and

10. Defendant also asserts that "the State invited this error" by not filing a pretrial brief on the "admissibility of [Victim's] hearsay" and by "deliberately walking [the detective] straight into the unnecessary testimony." According to Defendant, "because the State invited the error, exceptional circumstance warrants review and reversal." "The exceptional circumstances doctrine is applied sparingly, reserving it for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice." *State v. Johnson*, 2017 UT 76, ¶ 29 (quotation simplified). The doctrine applies "where a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *Id.* (quotation simplified). Although it is unclear, Defendant's reference to the State's "invited error" appears to be an attempt to assert a prosecutorial misconduct claim. Either way, Defendant provides no analysis as to why an error of this type constitutes an exceptional circumstance. Accordingly, we decline to address this assertion further.

11. Before closing arguments, defense counsel moved for a directed verdict on counts two (rape), three (rape), and four (object rape), but not count one (rape). The State conceded to the directed verdict on count four, and the trial court dismissed that

(continued…)

he therefore challenges the sufficiency of the evidence under the plain-error and ineffective-assistance exceptions to the preservation rule.[12]

¶49    To establish plain error regarding the sufficiency of the evidence, "an appellant must show 'first that the evidence was insufficient to support a conviction of the crime[s] charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury.'" *State v. Diaz*, 2002 UT App 288, ¶ 32, 55 P.3d 1131 (alteration in original) (quoting *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346).

¶50    "We first examine the record to determine whether, 'after viewing the evidence and all inferences drawn therefrom in a

---

(…continued)
count. With regard to counts two and three, defense counsel argued that "there's been evidence supporting a possible finding of one count [of rape] but nothing to suggest there were multiple counts." The trial court ultimately denied Defendant's motion for directed verdict on counts two and three and submitted the three counts of rape to the jury. On appeal, Defendant observes that defense counsel moved for directed verdicts on counts two through four, and he acknowledges that "it very well may be that counsel believed it would be futile to move for dismissal on Count 1."

12. Defendant also asserts that we should address this issue under the exceptional-circumstances exception to the preservation rule. Again, this exception applies "where a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *Id.* (quotation simplified). Defendant has failed to present any rare procedural anomaly or other exceptional circumstance that might justify his failure to preserve his sufficiency of the evidence argument. *See id.* Accordingly, we decline to address this argument further.

light most favorable to the jury's verdict, the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime[s] for which he or she was convicted.'" *Id.* ¶ 33 (alteration in original) (quoting *Holgate*, 2000 UT 74, ¶ 18). "Only then will we undertake an examination of the record to determine 'whether the evidentiary defect was so obvious and fundamental that it was plain error to submit the case to the jury.'" *Id.* (quoting *Holgate*, 2000 UT 74, ¶ 18).

¶51 "A person commits rape when the actor has sexual intercourse with another person without the victim's consent." Utah Code Ann. § 76-5-402(1) (LexisNexis 2017). Accordingly, in this case, the State was required to present evidence demonstrating that Defendant had nonconsensual sexual intercourse with Victim. *See id.*

¶52 At trial, the nurse testified that Victim had reported that "she had been raped four times." The nurse further testified that "there was ejaculation into [Victim's] vagina" and that based on that information, she took swabs from Victim's stomach, vaginal cavity and surrounding areas, and anus. The forensic biologist testified that she tested the swabs for seminal fluid and was able to "identif[y] sperm on . . . the vaginal swabs, anal swabs and stomach swabs." The DNA expert testified about the "five basic steps" in DNA analysis generally and about her DNA analysis in this case specifically. She stated that Defendant's DNA matched the DNA found in Victim's sexual assault kit. The DNA expert testified that the probability of an unrelated individual, randomly drawn from the population, matching the DNA profile "turns out to be in Caucasians 1 in 44 sextillion, in blacks it would be 1 in 350 sextillion, and in southwestern Hispanics it would be one in 340 quintillion."

¶53 Defendant asserts that "detracting from the foregoing" evidence is the fact that he "denied having [a] sexual encounter with [Victim], consensual or otherwise," and the fact that the

jury acquitted him of two counts of rape, thus "illustrating that the State's case was not 'utterly' overwhelming." But as the State notes, this argument "ignores the physical DNA evidence in the case." The DNA evidence revealed the presence of Defendant's DNA in Victim's vagina, and while the DNA evidence does not necessarily support multiple instances of sexual intercourse between Defendant and Victim, it does support a finding that Defendant and Victim had sexual intercourse at least once. And even though the nurse testified that Victim reported that she had been raped multiple times, which supports the element of nonconsent, a reasonable jury could have determined that the evidence only supported a finding that Defendant raped Victim one time.

¶54 Reviewing the evidence and the reasonable inferences that result from examining the evidence, we see nothing to suggest that "reasonable minds must have entertained a reasonable doubt" that Defendant had nonconsensual sexual intercourse with Victim. *See State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346 (quotation simplified). Thus, there was sufficient evidence to convict Defendant of one count of rape, and we conclude that the trial court did not commit plain error in submitting the matter to the jury for determination.

¶55 Defendant also asserts that defense counsel "was constitutionally ineffective for not making the motion for a directed verdict on count 1." Again, to demonstrate ineffective assistance of counsel, a defendant must show that defense counsel's performance was deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, "the failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." *State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52 (quotation simplified). Here, Defendant denied having *any* sexual contact with Victim, and yet his DNA was found inside of Victim's vagina. Moreover, the nurse testified that Victim had reported that she had been raped. Consequently,

there was sufficient evidence to support the jury's verdict of one count of rape, and defense counsel therefore did not render deficient performance by failing to move for a directed verdict on count one.

## IV. Cumulative Error

¶56    Finally, Defendant contends that "[c]umulative error warrants reversal of [his] conviction and a new trial ordered." "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (quotation simplified). "In assessing a claim of cumulative error, we consider all the identified errors, as well as any errors we assume may have occurred." *Id.*

¶57    After considering the circumstances of this case and the resolution of Defendant's other claims on appeal, our confidence that Defendant received a fair trial has not been undermined. We therefore reject Defendant's cumulative error claim.

## CONCLUSION

¶58    We conclude that any error in omitting the proposed rule 412 evidence regarding Victim's prior rape accusations was harmless beyond a reasonable doubt. In addition, Victim's statements to the nurse were admissible under rule 803(4) as statements made for purposes of medical diagnosis or treatment, and Defendant has failed to demonstrate that his Sixth Amendment right to confrontation was violated with regard to both the nurse's and the detective's testimonies. Lastly, because there was sufficient evidence to support the jury's verdict, the trial court did not plainly err by submitting the case to the jury.

¶59    Affirmed.

———————